# Wargo *v.* Pittsburgh Railways Company, Appellant.

Argued October 9, 1953. Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*William J. Lancaster,* for appellant.

*Milton 1. Watzman,* with him *Frederick N. Egler,
George Y. Meyer, Norman A. Groudine* and *Watzman
& Groudine,* for appellee.

OPINION BY MR. JUSTICE BELL, January 4, 1954:

Plaintiff was a passenger in a street car, operated
by the Pittsburgh Railways Company, which collided
with a truck driven by the additional defendant, Mar-
tin. His head banged against the side of the car, his
back, hip and head were injured and he had bruises

or cuts on his face, arm and leg which were of minor character. As a result of this collision, plaintiff claims that he had and still has severe pain in his back; that he is nervous; that he had dizziness and headaches which persisted until the trial; that he had running ears; and that he was permanently injured and unable to work. He was confined to bed for about three months. He was 51 years of age at the time of the accident, with a life expectancy at the time of the trial of 16.72 years.

The jury brought in a verdict "in favor of plaintiff of $15,000., to be paid as follows: $10,000. by Pittsburgh Railways Company and $5,000. to be paid by Martin." The Court apparently molded the verdict at some undisclosed time to read: "Verdict in favor of the plaintiff against both defendants in the sum of $15,000." Since no objection has been made to the changed or molded verdict, we will not pass upon the power of the Court to make the aforesaid change.

The Railways Company appealed from the judgment entered on the verdict contending "(1) that the verdict was against the weight of the evidence and not supported by medical and other testimony; and (2) that the verdict was excessive."

The facts in this case are rather unusual. Wargo at the time of the accident had been doing whatever odd little jobs he could pick up. He had had a regular job assisting a priest at Mass and for these services he got one dollar for each Mass. However "he had to leave that job in 1947 on account of religion", so that his only job at the time of the accident was as a janitor for the Holy Ghost Church, for which he was paid $85. a month. He testified that he averaged from the janitor and odd jobs about $50. a week. In his youth plaintiff had worked as a machinist; then

he got a job in Childs' Restaurant, from 1928 until 1931; then he went on W.P.A. While on W.P.A. in 1934 something caved in on top of him in a 20 foot ditch and his back got hurt. He received Workmen's Compensation for approximately ten years—from 1934 until 1944—during which time he admitted he was unable to work except as he put it "a little occasional part-time job for the Shadyside Mission which his family took care of." From 1934 until 1940 or 1944, the record isn't clear which, he wore a brace for his back. Since 1944 he had a number of odd jobs including one for a short time helping dig graves. He is now unable to bend over without pain and claims he cannot do any work without pain. Defendant's doctor admitted plaintiff could not do anything since the accident except light work.

Dr. Zubritzky saw and treated plaintiff immediately after the accident on February 18, 1948. He visited him 10 times at his home and thereafter saw him once a week at the doctor's office until September, 1948. His bill was $206. Plaintiff's main complaint, according to Dr. Zubritzky, was an extreme backache in the sacroiliac area. The doctor prescribed heat and a liniment, together with codeine or novocaine when the pain was severe. He testified that plaintiff's dizziness and headaches came from the accident but gave no testimony as to how long they continued, although plaintiff testified they continued until the time of the trial. The doctor testified that as far as work requiring plaintiff to bend over was concerned, he was permanently disabled.

Dr. Zubritzky's testimony appears to be both fair and illuminating. When asked whether there was any relationship between plaintiff's back injury which he received in 1934 and the back injury plaintiff claims to have gotten in the present accident, Dr. Zubritzky

testified that he did not know exactly what injury plaintiff got in the first accident but that his present injury was in exactly the same anatomical region and that *he could not say whether the accident aggravated the first injury or not.* He further testified that plaintiff now has a chronic myositis (a chronic muscular disease of the large muscles of the back) and with his age, some generalized arthritic condition of the back, and that he did not know whether that was what the plaintiff had in the period between 1934 and 1944.

Defendant's doctor, Dr. Epstein, who was a specialist in industrial surgery since 1928, diagnosed the condition of plaintiff's back as one of hypertrophic arthritis and said that plaintiff had had this for 10 or 15 years, and that the x-rays confirmed this, and showed that *the back condition was due not to an injury but to an arthritic change,* which is both insidious and progressive.

Under the testimony of the defendant's doctor, plaintiff could not recover anything for his back condition since it was neither caused nor aggravated by the recent accident. Under the testimony of plaintiff's family physician, Dr. Zubritzky, it is extremely doubtful whether plaintiff is entitled to recover anything for his back condition, because the doctor frankly admitted that *he could not say whether the accident aggravated the first injury or not.* In *Nestor v. George et al.,* 354 Pa. 19, 46 A. 2d 469, the Court said, page 24: "The sixth assignment is based on the admission of the testimony of Dr. Kuntz to the effect that the 'condition from which plaintiff suffers today could have originated in the accident of 1928'. The admission of this testimony was error and the assignment is sustained. In Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 206, 133 A. 256, this court said: . . . The witness would have to testify, *not that the condition of*

*claimant might have, or even probably did, come from the accident, but that "in his professional opinion the result in question came from the cause alleged"*;* for, according to our latest pronouncement on this subject, a less direct expression of opinion would fall below the required standard of proof, and therefore would not constitute legally competent evidence.' "

Dr. Sherman, who examined the plaintiff in order to testify at the trial, testified in behalf of the plaintiff that the accident in question "reinduced the old back problem which was quiescent", and that plaintiff was completely disabled as to any occupational situation. On cross-examination, Dr. Sherman admitted that there was no way of telling from the x-ray report how long plaintiff's back condition had existed. He admitted there were arthritic changes of a marked degree in plaintiff's back and said: ". . . *I think that there was back injury that could have easily caused this in 1934.* . . . Q. Yes; but if he was laid up with it for ten years, that is what he said, *that would indicate that any improvement would probably be out of the picture*; wouldn't it? A. *Yes*; at the site of injury; yes, sir. Q. Yes. So that if he is unable to work now there is no way of telling whether that condition was in any way caused by this recent accident; is there, the street car accident? A. *I will admit that in my opinion the street car accident did not cause the injury.* . . . Q. You would have no way of telling, you as a physician, would you, whether this accident had even aggravated it or not? A. *Only from the patient's remarks and clinical history.* Q. Yes. You would have to rely on what he told you in determining— A. That's right. Q. —whether it had been aggravated? A. That's right, sir. ... Q. The *arthritis* that seemed to be in his back, would you say

---

* Italics throughout, ours.

174

as a physician that that was the result of either of these two accidents *or would it be the result of age?* A. *I believe age, wear and tear.* Q. Wear and tear and age? A. Yes. I will admit that."

The testimony of plaintiff's own physicians (a) make it clear that the present accident did not cause his back condition and (b) make it doubtful whether the present accident *aggravated* plaintiff's previous back injury, which had prevented him from working from 1934 to 1944. From the testimony of plaintiff's physicians it is impossible to do anything but guess as to how much, if any, of plaintiff's present back condition is due to the present accident instead of to his original back injury and arthritis!

Plaintiff also claimed for pain and injury to both ears. Plaintiff first complained to Dr. Zubritzky of his ears in *April, 1948.* Both ears were draining and the doctor found it was an eczema or external condition and stated that *it could not have resulted from a blow to the head or other similar injury,* but 'could have been caused by the introduction of slag, particles or debris or foreign matter into the ear. There was no evidence that at the time of the accident slag particles or debris or other foreign matter got into plaintiff's ears. Dr. Zubritzky sent plaintiff to Dr. Nicolette, who is an ear specialist, in April, *1949.* Dr. Nicolette treated him for eczema about 25 times and submitted a bill for $145. Plaintiff at the time of the trial had a loss of hearing of about 70% in both ears. On *direct examination* Dr. Nicolette testified that *the cause of plaintiff's ear condition was unknown* and in answer to the question, "From the history of this case and your diagnosis what would you say caused it? A. *I couldn't answer that. . . . A. Well, I really don't know what the cause is in this particular case.* This could be hereditary or it could be acci-

dental, I don't know." Although the jury was permitted to find that the condition of the ears was caused by the accident, this was basic error; it is as obvious as anything can be that plaintiff failed to prove that the drainage or other condition of his ears was due to the accident. See *Nestor v. George et al.,* 354 Pa., supra.

A verdict in favor of plaintiff in the sum of $15,-000. cannot possibly be justified in the light of the medical and other testimony in this case. While an appellate Court rarely reverses a lower Court because the weight of the evidence was against the verdict or because the verdict was excessive, it is our duty to do so where the jury's verdict shocks our sense of justice or when the action of the lower Court in dismissing a motion for a new trial constituted a clear abuse of discretion: *Duffy v. The Monongahela Connecting RR Co.,* 371 Pa. 361, 89 A. 2d 804; *Dupont v. Gallagher,* 360 Pa. 419, 62 A. 2d 28; *King v. Equitable Gas Co.,* 307 Pa. 287, 161 A. 65. Cf. also: *Jones v. Williams,* 358 Pa. 559, 58 A. 2d 57.

In a case where it is very doubtful whether the injuries complained of were caused or aggravated by the accident in question, or had no connection therewith, it is important for plaintiff to recall, on a retrial of the case, that it is highly improper to attempt to lead the medical witnesses.

Judgment reversed and new trial granted.