**Leopold S. VACCARO**

v.

**MARRA BROS., Inc.**

**Civ. A. No. 13854.**

United States District Court
E. D. Pennsylvania.

April 19, 1955.

William M. Alper of Freedman, Landy & Larry, Philadelphia, Pa., for appellant.

Albert C. Gekoski, Philadelphia, Pa., for defendant.

GRIM, District Judge.

This is a diversity action for damages arising from personal injuries allegedly suffered by plaintiff as a result of defendant's negligent handling of a heavy wire cable which struck plaintiff under the right armpit. After trial the jury returned a verdict in favor of plaintiff physician, Leopold S. Vaccaro, and against defendant stevedoring company, Marra Bros., Inc., in the amount of $25,-000.

There was ample evidence to support the jury's finding (implicit in its verdict) that defendant was negligent and consequently liable for any injuries proximately caused by its negligence.

There is adequate medical testimony supporting plaintiff's claim for the comparatively minor injuries to his shoulder resulting from the accident. Dr. Edwin O. Geckler, an orthopedic surgeon, testified that the accident produced a wrenching and stretching of the muscles and ligaments outside of the right shoulder joint and an aggravation of a pre-exist-

ing chronic inflammation inside the shoulder joint. It is obvious that these shoulder injuries and the pain and suffering therefrom account for only a small part of the $25,000 verdict in this case.

The bulk of the verdict was based on the medical testimony produced by plaintiff's expert witness, a cardiologist named Dr. William D. Stroud, concerning plaintiff's claim that the accident on February 10, 1951, caused injury to his heart or caused an aggravation of a pre-existing heart condition.

There is no dispute that plaintiff had a coronary insufficiency and damage to his heart muscles resulting from hypertension and hardening of the arteries as early as 1948, three years before the accident. It is also undisputed that an examination of plaintiff's heart four or five weeks after the accident revealed the scar of a healed myocardial infarct on the heart muscle resulting from a coronary occlusion.

The question now before me is whether there is any competent proof in the record of a causal connection between the accident and plaintiff's heart condition after the accident. Was plaintiff's pre-existing heart condition aggravated as a result of the accident? The only pertinent evidence on that subject in the case is the medical testimony of Dr. Stroud. I have concluded from a careful examination of Dr. Stroud's testimony that plaintiff has failed to sustain the burden of proving that the accident was the proximate cause of his myocardial infarct. In support of this conclusion I shall first quote from the record pertinent portions of Dr. Stroud's testimony and then cite the applicable Pennsylvania cases, inasmuch as this case is governed by the law of Pennsylvania, where the accident occurred.

Plaintiff's counsel first asked Dr. Stroud on direct examination: " * * * Have you an opinion with reasonable medical certainty as to whether or not there was causal relation between the traumatic incident on the pier on February 10, 1951, and the coronary conditions which thereafter affected the doctor, the patient?" Dr. Stroud stated his opinion as follows: "Well, I believe that this strain of the accident, and what trauma he received during the accident, most likely contributed to a myocardial infarct, which was discovered by Dr. La-Place some weeks later." (N.T. 94)

On cross-examination Dr. Stroud testified: " * * * I think it is impossible to state positively the extent to which the accident contributed towards Dr. Vaccaro's present condition." (N.T. 95) Defendant's counsel then asked: "And the myocardial infarct, in your opinion, may have been caused by the accident, but you cannot positively state that it was? A. That is right." (N.T. 97)

In answer to the next question Dr. Stroud stated (N.T. 97–98):

" * * * I came to the conclusion * * * 'that' [the] myocardial infarct, discovered four or five weeks after the accident by Dr. LaPlace was probably, or, possibly—I think possibly—was due to the emotional upset and trauma produced by the accident.

"Q. You prefer the term 'possibly' to the word 'probably?' A. Yes.

"Q. Now, doctor, isn't it true that the myocardial infarction that we are discussing now is a frequent and common complication of the hypertensive and arterial sclerotic heart condition, with added emphysema, that Dr. Vaccaro suffered from, which has no connection with the accident? A. That is correct.

"Q. So that is the reason, doctor, that you use the word 'possibly' in your opinion concerning the causal connection? A. That is right. I wish I could use the word 'probably' for Dr. Vaccaro's benefit."

On recross the following colloquy took place between defendant's counsel and Dr. Stroud (N.T. 115–116):

"Q. At any event, sir, to sum up is it correct to say that you cannot ascribe Dr. Vaccaro's present condition or any part of it as having been solely caused by the accident? A. I can't say positively but I can say that there is a definite possibility that his infarct that was discovered by Dr. LaPlace subsequent to the accident was contributed to by the accident.

"Q. Contributed toward but not caused solely by? A. It could be caused solely by.

"Q. That is, of course, conjectural merely? A. That is right."

Briefly summarized, Dr. Stroud's testimony was that in his opinion there is a definite possibility that plaintiff's myocardial infarct was either caused or contributed to by the accident.

A review of the applicable Pennsylvania cases clearly demonstrates the legal insufficiency of the above-quoted testimony to establish a causal connection between the accident and plaintiff's subsequent heart condition.

In Wargo v. Pittsburgh Railways Company, 376 Pa. 168, 172, 101 A.2d 638, 640, the Supreme Court of Pennsylvania held: " * * * Under the testimony of the defendant's doctor * * * it is extremely doubtful whether plaintiff is entitled to recover anything for his back condition, because the doctor frankly admitted that *he could not say whether the accident aggravated the first injury or not.*"

In Nestor v. George, 354 Pa. 19, 24, 46 A.2d 469, 472, the Pennsylvania Supreme Court held to be error the admission of a doctor's testimony to the effect that the " 'condition from which plaintiff suffers today could have originated in the accident * * *.' "

■■ The applicable principle of law was perhaps best stated by the same court in the recent case of Menarde v. Philadelphia Transp. Co., 376 Pa. 497, 501, 103 A.2d 681, 684:

"In order to link her impaired physical condition to the defendant's conduct, the plaintiff was forced to depend on expert medical testimony because scientific knowledge was required for the elucidation of the question. * * * Moreover the expert has to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence. Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 206, 133 A. 256; Powell v. Risser, 375 Pa. 60, 68, 69, 99 A.2d 454 * * *."

In the instant case Dr. Stroud's testimony that in his professional opinion the accident possibly caused or contributed to plaintiff's heart condition clearly falls below the required standard of proof and does not constitute legally competent evidence. This evidence, therefore, should have been stricken from the record and the jury instructed to disregard it.

The testimony relating to plaintiff's shoulder injuries is the only competent medical evidence remaining in the case. Plaintiff has not suggested, however, that these relatively minor shoulder injuries are responsible for his alleged permanent partial loss of earning capacity, which is the major item of damages included in the verdict. According to plaintiff's theory and attempted proof of his case, the bulk of his claim and consequently the bulk of the verdict are for the loss of earning capacity due to his alleged heart injury. It is obvious, therefore, that the evidence relating to plaintiff's shoulder injuries cannot conceivably support or justify a verdict of $25,000. Since the amount of the verdict is grossly excessive, a new trial must be granted.