Ischo, Appellant, *v.* Bailey, Appellant.

Argued November 29, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Yolanda G. Barco,* with her *George J. Barco,* and *Barco and Barco,* for appellant.

*Stuart A. Culbertson,* and *Paul E. Allen,* for defendant, Bailey, appellee.

*George J. Barco,* with him *Yolanda G. Barco,* and *Barco and Barco,* for plaintiff, Ischo, and additional defendant, Gotto.

*Fred C. Kiebort,* with him *E. Lowry Humes,* and *Humes and Kiebort,* for additional defendant, Gotto.

Opinion by Mr. Justice Bell, March 28, 1961:

An accident occurred on December 19, 1956, about 11:30 p.m. at the intersection of Pine and Market Streets in Meadville, Pennsylvania. Gotto was the driver of one car, Bailey was the driver of another car, and Ischo was a passenger in Gotto's car. They all were badly hurt and everybody brought suit. Three cases were consolidated in the Court below for trial and were argued in this Court together. We believe it will clarify complicated questions if we discuss the cases in the manner hereinafter set forth.

Ischo was a passenger in the Gotto automobile. Gotto was driving his car in a westerly direction on Pine Street, which was a one-way through street. Bailey was driving his station wagon in a southerly direction on Market Street. There was a STOP sign on Market Street. As Gotto approached the intersection, Bailey was approaching it from Gotto's right. The Gotto car struck the Bailey car broadside on its left side almost in the middle of the intersection. Neither Gotto nor Bailey saw the other's car until at or after the collision. Gotto sued Bailey and Bailey sued Gotto, and Ischo sued Bailey, and Bailey brought in Gotto as an additional defendant. The jury returned a verdict in which they found that both Gotto and Bailey were negligent.

In the case in which Ischo was plaintiff the jury returned a verdict in favor of the plaintiff and against both defendants in the amount of $6802.49. The lower Court granted Gotto a new trial in his case against Bailey; refused Bailey's motion for judgment n.o.v. in the case in which Ischo sued him; granted Gotto's motion for judgment n.o.v. in the case in which Ischo sued him; and refused Ischo's motion for a new trial,

which was based on the inadequacy of the verdict. Ischo and Bailey appealed.

Sur Gotto's motion for a new trial against Bailey, the trial Court erroneously considered the test for a new trial to be the same test as is applicable in a motion for a judgment n.o.v. We cannot understand how such a mistake could be made in the light of the authorities. See: *Muroski v. Hnath,* 392 Pa. 233, 139 A. 2d 902; *Sherman v. Manufacturers Light & Heat Co.,* 389 Pa. 61, 68, 132 A. 2d 255 (and 23 cases cited therein). However, as we shall see, the error is immaterial.

The lower Court granted Gotto a new trial in his suit against Bailey because it said there was no evidence to show that Gotto was negligent or was guilty of contributory negligence, and consequently the verdict was against the weight of the evidence. We note parenthetically that if Gotto was not negligent or contributorily negligent, his motion for judgment n.o.v. should have been sustained. The lower Court further said: "If there was any conflicting evidence from which the jury could properly infer . . . Gotto was negligent in the operation of his vehicle we wouldn't feel justified in interfering with this verdict . . . ." We do not understand how that Court could possibly have overlooked either the conflicting evidence or Gotto's own evidence which clearly and unquestionably convicted him of negligence and of contributory negligence (in the respective cases). Gotto called Bailey as on cross-examination in the suit in which Gotto was plaintiff. Bailey testified that he brought his car to a full stop near the stop sign, which is 24 feet north of the northline of Pine Street. He was able to see very little on Pine Street to his left because of the Kress Building on the corner. For this reason he proceeded at a speed of several miles an hour until he could get a better view. "I got up as far as I thought

I could without getting in the line of traffic, looked up, didn't see anything and proceeded across." He further testified that he could see to his left (whence Gotto was coming) about 100 feet and that he increased the speed of his car in the intersection to about 15 miles an hour. He was knocked unconscious by the collision and apparently never saw the other car. Gotto, qua plaintiff, testified that he had been driving on the right side of Pine Street and that the collision took place when he was halfway across the intersection.

The evidence, including the debris, showed that the collision occurred in approximately the middle of the intersection. Gotto was driving toward Market Street at approximately 20 miles an hour and looked to his right (Bailey was coming from his right) as he proceeded. Because of the Kress Building on the corner to his right and the trees he was able only to see a few feet north on Market Street. He then looked to his left and he could see quite a distance to the south on Market Street as there was no obstruction on that corner. He saw no traffic approaching from his left. As he got within 5 to 10 feet of the cross-walk on Market Street he looked to the right again (from which direction Bailey was coming) and then could see 50 to 70 feet west on Market Street. He again saw no traffic coming from his right. He testified that he continued to look as the car proceeded at least 10 feet and was crossing the cross-walk. He then looked straight ahead and the next thing he knew a car suddenly flashed in front of him and struck the front end of his car about the middle of the intersection. A photograph was introduced in evidence which showed that Gotto could (at least in daytime) have seen up Market Street to his right about two blocks.

It is crystal clear that these cases were particularly jury cases and could not possibly be decided in

favor of Gotto or of Bailey as a matter of law. If Bailey's testimony is accurate, Gotto is clearly and beyond the peradventure of a doubt guilty of negligence and of contributory negligence. If Gotto's testimony is accurate it is equally clear that his own testimony proves him to be guilty of negligence and of contributory negligence. It is absurd to say (a) that there was no conflicting evidence, and (b) no evidence to justify a jury in finding that Gotto was guilty of negligence and/or of contributory negligence. If there ever was a case where each driver was guilty of negligence and of contributory negligence, this is it; and if there ever was a fair and just verdict of a jury which found both Gotto and Bailey negligent, this is it.

The Order of the lower Court granting Gotto a new trial is reversed, with directions to enter judgment on the verdict for defendant in Gotto v. Bailey and in Bailey v. Gotto.

In the case in which Ischo sued Bailey, who in turn joined Gotto as additional defendant, the lower Court entered judgment in favor of Gotto non obstante veredicto, because there was no testimony that could convict Gotto of contributory negligence and consequently Gotto cannot be held responsible for injuries sustained by the passenger Ischo. For reasons hereinabove set forth, this Order and the judgment n.o.v. which was entered in favor of Gotto is reversed and the record is remanded with directions to enter judgment on the verdict for plaintiff Ischo in Ischo v. Bailey and Gotto.

There remains the question—a difficult one as we shall see—whether Ischo's motion for a new trial was justifiably dismissed by the lower Court. Ischo moved for a new trial because of the inadequacy of the verdict which the jury rendered in his favor against both defendants. The jury returned a verdict of $6802.49,

which it broke down as follows: Medical $1142.20; Loan $4660.29; Pain and suffering $1000. The Court dismissed Ischo's motion for a new trial "because the verdict was substantial and represented a careful reflection by the jury on the items involved, and it would be an abuse of discretion for the Court to set aside the verdict." If the jury had not broken down the verdict the Order of the lower Court would unquestionably have to be sustained.

However, the breakdown raises several serious and close questions. Plaintiff was in a business with one partner. It consisted mainly of installing floor covering, kitchen cabinets and similar installations. Plaintiff sometimes worked as an artisan in the business and at other times supervised others. Each partner drew $65 to $100 a week as salary, which was charged against the profits of the business. During the entire time he was sick plaintiff drew his salary and the profits of the business were far higher than the year before. He suffered no actual loss of salary or earnings or profits. However, when he sold out his interest in the partnership, the salary which he had drawn plus one-half of the salary his partner had drawn were deducted from the amount agreed upon for his interest. He claimed he could not work for a year and although the Judge and jury disbelieved a part of this testimony, the jury awarded him $4660.29 for loss of wages which was dubiously called, under the testimony and under the jury verdict "Loan". The lower Court believed that the jury's award was too generous—on this item it is doubtful whether plaintiff was entitled to any amount whatever. On the other hand, the injuries were severe and the jury's award was undoubtedly very, very low. The accident happened December 19, 1956. The principal injury was a comminuted fracture of the tibia and fibula of his left leg. A Steinman pin was inserted

and the leg was put in traction for about a week. The leg was then put in a plaster cast, which remained until April 30 1957. This was replaced by another cast which was left on until the 5th of June. This cast was then removed and a walking cast put on, which was left on until August 13th and then removed. After that plaintiff walked around on crutches or with a cane. He did not return to work until about the first of December, 1957. In the meantime, however, the leg atrophied and became considerably smaller than his right leg, which condition was permanent and will result in a 25% to 30% disability. The Judge believed, and apparently the jury did likewise, that this disability would not result in any loss of earning power.* In *December, 1957,* the plaintiff went deer hunting and while in the woods slipped and fell down and fractured his left hip. The jury's verdict for pain and suffering was, we repeat, obviously exceptionally low. However, with respect to loss of earning power, the jury and trial Judge saw plaintiff and had a right to find that he will suffer no loss of future earning power by reason of the injury to his leg.

The trial Judge felt that the too low amount for pain and suffering was offset by the too high so-called Loan and, relying on *Elza v. Chovan*, 396 Pa. 112, 152 A. 2d 238, correctly held that where a verdict is for a substantial amount the mere fact that it is less than the Judge would have awarded had he been sitting on the jury is not ground for a new trial. In that case, where this Court reversed the grant of a new trial and entered judgment on the verdict, we said: "It is the province of the jury to assess the worth of

---

* Although it is not the test, we note parenthetically that plaintiff's earnings increased very substantially in the year in which he was injured.

the testimony and to accept or reject the estimates given by witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's: Paustenbaugh v. Ward Baking Co., 374 Pa. 418, 97 A. 2d 816 (1953); Perzak v. Coulter, 171 Pa. Superior Ct. 475, 90 A. 2d 256 (1952).

"The mere fact that a verdict is low does not mean that it is inadequate. Nominal damages have been upset: Bradwell v. Railway Co., 139 Pa. 404, 20 A. 1046 (1890); Spence v. Stockdale Borough, 57 Pa. Superior Ct. 622 (1914), and have been allowed to stand: Palmer v. Leader Publishing Co., 7 Pa. Superior Ct. 594 (1898). The same is true of low but substantial verdicts. In Stevens v. Frank, 151 Pa. Superior Ct. 222, 30 A. 2d 161 (1943), a judgment of $200 for a wife and nothing for her husband was affirmed. In Ewing v. Marsh, 174 Pa. Superior Ct. 589, 101 A. 2d 391 (1953), a verdict of $3000 was upheld, the court saying: 'This was low, but certainly not a nominal verdict such as would give rise to an inference of mistake or partiality by the jury.' And in Alleva v. Porter, 184 Pa. Superior Ct. 335, 134 A. 2d 501 (1957), where the verdict was low but substantial, the grant of a new trial was reversed and judgment was entered on the verdict."

The question before this Court is whether the refusal to grant a new trial because of the inadequacy of the verdict constitutes a manifest abuse of discretion. Under the well settled principle which was reiterated by this Court in *Muroski v. Hnath*, 392 Pa. 233, 237, 139 A. 2d 902, and the many cases cited therein, and in *Sherman v. Manufacturers L. & H. Co.*, 389 Pa. 61, 69, 132 A. 2d 255, and cases cited therein, and in *Carpenelli v. Scranton Bus Co.*, 350 Pa. 184, 38 A. 2d 44, and *Nikisher v. Benninger*, 377 Pa. 564, 105

A. 2d 281, and in *Elza v. Chovan,* 396 Pa., supra, we cannot so hold.

In *Muroski v. Hnath,* 392 Pa., supra, we affirmed the grant of a new trial in the suit of *Muroski v. Hnath* and *Daniels,* because the verdict was excessive, and the grant of a new trial to Jane Muroski, because of the inadequacy of the verdict, and said (page 237) : "In considering the action of the lower Court in granting or refusing a new trial, the law is clearly settled —an appellate Court will affirm unless there has been clear abuse of discretion or an error of law. Wargo v. Pittsburgh Railways Co., 376 Pa. 168, 101 A. 2d 638; Karcesky v. Laria, 382 Pa. 227, 114 A. 2d 150; Smith v. Allegheny County, 377 Pa. 365, 105 A. 2d 137; Edelson v. Ochroch, 380 Pa. 426, 111 A. 2d 455; Foster v. Waybright, 367 Pa. 615, 80 A. 2d 801.

"In Karcesky v. Laria, 382 Pa., supra, the Court said (page 235) : ' " 'When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere: Schwartz v. Jaffe, 324 Pa. 324, 188 A. 295; Pretka v. Wilson, 325 Pa. 491, 190 A. 722. When a trial court refuses to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action. . . .' " ' "

In *Karcesky v. Laria,* supra, the Court said (page 235) : "Where the verdict is, as here, substantial, a new trial 'for inadequacy' should be granted only when the trial court is convinced the verdict is so unreasonably low as to present a clear case of injustice even in the light of the doubtful negligence of defendant or the doubtful contributory negligence of the plaintiff, or both: Cf. Takac v. Bamford, 370 Pa. 389, 88 A. 2d 86; Nikisher v. Benninger, 377 Pa., supra; Carpenelli v. Scranton Bus Company, 350 Pa., supra."

The lower Court correctly dismissed Ischo's motion and rule for a new trial.

The Order of the lower Court granting Gotto a new trial in his suit against Bailey is reversed, with directions to enter judgment on the verdict for defendant in *Gotto v. Bailey.*

The judgment n.o.v. which was entered in favor of Gotto is reversed and the record is remanded with directions to enter judgment on the verdict for plaintiff Ischo in *Ischo v. Bailey* and *Gotto.*

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE EAGEN:

I agree that the verdict of the jury, finding both Gotto and Bailey guilty of causative negligence, was fully justified by the evidence. Hence neither should recover and judgment should be entered for each defendant in the lawsuits instituted one against the other. However, in the case of Ischo against Bailey and Gotto, I am firmly convinced that a new trial should be granted and that the lower court abused its discretion in refusing to do so. In this case I, therefore, dissent.

The plaintiff Ischo, was in no manner responsible for this accident. He was truly an innocent third party. As the majority opinion points out, the negligence of the drivers of both cars involved in the accident was abundantly clear. There was not an iota of evidence to even suggest any possible contributory negligence on the part of Ischo. The evidence is clearly preponderate in favor of his right to recover as against both Gotto and Bailey.

His (Ischo) injuries were extremely serious. He suffered, among other injuries, comminuted fractures of the tibia and fibula in the lower third portion of the left leg. When the cast was removed, approximately eight months after the accident, it was found

that the leg was markedly atrophied with ankylosis of the ankle and the knee; in addition, there was a deformity resulting from the angulation or bowing toward the back of both the tibia and the fibula. The final outcome was a twenty-five to thirty per cent functional disability of the leg, permanent in nature.[1] He was only thirty years of age at the time of the occurrence and was a skilled and experienced cabinetmaker.

The verdict awarded was $1000 for pain and suffering and nothing whatever for permanent physical disability or loss of earning capacity. In view of the uncontroverted evidence as to the extent of the injuries and the fact that the liability was clearly established, this award was ridiculously inadequate. The majority opinion pointedly states, *"[T]he jury's award was undoubtedly very, very low."* It also states that the jury had the right to find that the plaintiff will suffer no future loss of earning power. How a man, engaged in the trade plaintiff enjoys, can admittedly suffer twenty-five to thirty per cent permanent functional disability of the leg with no resulting loss of future earning power, is just beyond my comprehension.

The lower court and the majority opinion urges that this inadequacy is offset by the award given for loss of wages.[2] It is said that the verdict in this respect "was too generous" and "on this item it is doubtful whether plaintiff was entitled to any amount whatever." If this be the case, then this claim should not have been submitted to the jury in the first place. However, the record is patently clear that the claim

---

[1] All of this was undenied and, in fact, substantially corroborated by a physician who examined plaintiff for the defendant, Bailey.

[2] Incorrectly designated "Loan."

for loss of earnings was a factual question for the jury to resolve and, significantly, no one disputes that this is so. While he was paid his usual salary during the period of his total disability, later on this total sum was completely taken away by charging the amount against his capital interest in the business. The fact that the trial judge disbelieved the evidence, supporting the claim for loss of wages, is insufficient legal reason to cancel it out. Again, I quote from the opinion of my distinguished colleague, "It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by witnesses."

Finally, the conclusion that because the plaintiff was awarded too much for loss of wages (in the opinion of the trial judge), he should be denied adequate compensation for injuries unquestionably suffered through the negligence of the defendants, is not in accord with my thinking.

Justice demands a new trial.

Mr. Justice MUSMANNO and Mr. Justice BENJAMIN R. JONES join in this opinion.