Boudwin, Appellant, *v.* Yellow Cab Company.

Argued November 20, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

rear-gument refused March 1, 1963.

*James E. Beasley,* with him *Beasley & Ornsteen,* for appellant.

*Tom P. Monteverde,* with him *Samuel D. Slade, William A. Schnader,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 21, 1963:

The question presented in this appeal is perhaps one of logic rather than of law, although of course only controverted legal principles can bring a case before this Court for review. In an action involving damages arising out of a tortious accident, is it proper to inform the jury that the injured person is receiving or has received workmen's compensation? That question has already been met in other cases but it is presented here in a slightly different form. The answer, however, always remains the same.[1]

The victim of a tort is entitled to receive from his tortfeasor the full amount he is entitled to, as the result of the latter's negligence, regardless of what the

[1] *Blatt v. Davis Construction Co.,* 184 Pa. Superior Ct. 30.

former receives from other sources. For instance, it would be entirely improper, in a personal injury case, for the defendant to show that the plaintiff was receiving benefits under an accident insurance policy, or that he was on a pension, or was obtaining assistance from the government as a war veteran or in any other capacity. It is no less irrelevant in a trespass action for the jury to be informed that the plaintiff, during the period he is claiming damages for injuries allegedly inflicted by the defendant, was paid workmen's compensation as a result of the same injuries for which he is claiming damages. A tortfeasor may not ride to immunity from his wrong on the back of workmen's compensation paid by someone else. His disability is direct and may not be transferred.

While workmen's compensation is a convenient and very helpful crutch by means of which an injured employee may hobble along until he returns to work, it can by no means be regarded as the equivalent of the full rehabilitation to which he is entitled because of injuries inflicted by a third person's wrongdoing.

Judges should be vigilant, in personal injury trespass cases, to keep out of the trial all references to benefits collaterally received by the plaintiff. In the case of *Healy v. Rennert,* 9 N.Y. 2d 202, the Court of Appeals of New York well said: "In most jurisdictions the damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute (13 A.L.R. 2d 355). In Standard Oil Co. v. United States (153 F. 2d 958, aff'd. 332 U. S. 301), it is stated that in the United States the prevailing rule seems to be that an injured person may recover for wages lost and medical expenses incurred during his incapacity even though such

amounts were supplied by insurance or gratuitously. In Capital Products, Inc. v. Romer, [102 U. S. App. D.C. 279], (252 F. 2d 843), the court held that the defendant was not entitled to show in mitigation of damages that a fireman had secured medical retirement from the Fire Department at half pay under an established pension system."

The pertinent facts in the case at bar follow. Irene Boudwin, an employee of the Perfect Photo, Inc., of Philadelphia, was seriously injured on October 24, 1957, when the car which she was driving for her employer, was struck by a cab of the defendant Yellow Cab Company. She brought suit against the cab company and, in the ensuing trial, the jury returned a verdict in her favor in the sum of $16,000. She asks for a new trial on the ground that the verdict inadequately covered her injuries which impaired her vision and affected her spinal column to the extent that she has been unable to work at gainful employment ever since the accident. She was hospitalized five different times for varying periods for examination and treatment in the fields of neurology, neurosurgery, opthalmology and orthopedics.

From the date of the accident up to the time of the trial she lost $9,166 in unpaid wages; her medical expenses amounted to $3,451. Her special damages thus totaled $12,617, which left her only $3,383 for pain and suffering, reduction in earning power, and medical expenses to be incurred in the future.

It could be argued that, in the absence of trial errors, or palpable misapprehension of the facts, the jury is in a better position than an appellate court, to assess the damages due a plaintiff who has proved negligence against the defendant. The plaintiff submits here, however, that there were indeed trial errors and that these errors occasioned what she claims is a grossly inadequate verdict. The most serious of those as-

serted trial errors was the introduction of evidence on workmen's compensation.

The accident occurred, as already stated, on October 24, 1957. The plaintiff was paid workmen's compensation, through her employer's insurance carrier, Aetna Insurance Company, from October 24, 1957 to November 24, 1960. In his cross-examination of the plaintiff, defendant's counsel sought to inquire into this workmen's compensation. Plaintiff's counsel objected. Defendant's counsel argued: "I offer this not as evidence in diminution of the plaintiff's right to recover, but simply in connection with the issue of credibility . . ."

The trial court overruled the objection and the plaintiff was required to answer, which she did, admitting that she had received workmen's compensation. This evidence threw confusion into the jury box. The court said to the jury: "Let me say to the jury at this point, the fact she was receiving workmen's compensation has nothing to do with the mitigation of damages and you will not have that in your minds at all, or diminution of damages, merely the fact it was received."

This explanation could not remove from the minds of the jury the fact that the plaintiff had already received moneys for the same injuries for which she was now claiming damages from the defendant.

The defendant argues that no harm was done to the plaintiff's case by this testimony because no mention was made of the actual amount of workmen's compensation paid. The absence of that particular information perhaps aggravated rather than lessened the harm done the plaintiff because the jury was allowed to believe that the workmen's compensation was equivalent to the plaintiff's full salary, which, of course it was not.

Defendant's counsel argued at the trial, as he does here, that he opened up the subject of workmen's compensation for the purpose of attacking Miss Boudwin's credibility, asserting that since there was testimony at the trial that she was not in fact grievously disabled, she, by continuing to receive compensation, told, in effect, a falsehood. But how could such evidence prove that Miss Boudwin had engaged in falsehood? The Aetna Insurance Company certainly was not compelled to pay the plaintiff compensation merely because she *said* she was unable to work. If the insurance company continued to send her workmen's compensation checks it could only be because it was *convinced* that, because of her disablement, she was entitled to them. If the insurance company believed, and could prove that Miss Boudwin was not in fact incapacitated, all it had to do, in order not to be imposed upon, was to take appropriate action before the Board of Workmen's Compensation. It is not even within the realm of speculation that the insurance company may have paid compensation to Miss Boudwin out of charitable impulses. Nor would it be permitted to do so. How then, can it reasonably be argued that the uncoerced payment of compensation by Aetna for three years in any way established that Miss Boudwin was lying by accepting it?

If it was proper to show that Miss Boudwin was not entitled to workmen's compensation, then it should have been equally proper for her to introduce as much evidence as she desired to prove the contrary, which would have meant, of course, a retrial of the workmen's compensation case within the framework of the damage case. Such a procedure could only result in evidentiary chaos.

Defendant's counsel argues that the workmen's compensation matter was not introduced for the purpose of reducing the amount of the verdict. What other

purpose could there have been? Even, however, accepting the violent hypothesis that *that* was not the intent of defendant's counsel, such absence of intent would not scour impropriety from the improper question he put to the plaintiff. It is not what counsel intends that counts; it is the effect on the jury of what he says which counts; and one cannot exclude the possibility, if not probability, that a discussion of workmen's compensation in a personal injury case produces the impression that the plaintiff is seeking double remuneration for one set of injuries.

It is admitted by the defendant that it could not have introduced in its direct case the fact that the plaintiff received workmen's compensation. But, getting the same subject before the jury through an indirect method does not make such introduction legal. Evidence which cannot be brought into a case through the front door of direct evidence may not be introduced through the chimney of improper cross-examination.

Bringing the matter of workmen's compensation into this case harmed the plaintiff in another way. If the jury found, as defendant wanted it to find, that the plaintiff received compensation to which she was not entitled, this finding would not discharge the debt the plaintiff owes the insurance carrier. She would still have to pay back all that she received legally and properly, but since the jury would already have deducted from her verdict what they *thought* she had not been entitled to, she would thus have to pay the insurance carrier an amount she did not receive in the damage case, which would in effect work a double deprivation.

During the trial defendant's counsel asked the plaintiff: "Now, you testified to certain hospital and medical bills which have been incurred in connection with your injuries. Can you tell us which of those you yourself have paid?"

The trial court properly sustained the objection made by plaintiff's counsel, but already the plaintiff's case had been dealt an unfair disadvantage by this question because it allowed the jury to assume that there were bills which the plaintiff did not have to pay, and the only conclusion the jury, on that premise, could reach would be that the bills were paid by the same company that paid her workmen's compensation. Which, of course, had nothing to do with the case. This is another illustration of the pitfalls into which a trespass trial may stumble when it leaves the solid rock highway of the principal issue and rambles into the marshes of irrelevancy of workmen's compensation.

The defendant cites *Rice v. Shenk*, 293 Pa. 524, as authority for its position at the trial and here on appeal. There, the subject of workmen's compensation was adverted to only indirectly and under circumstances wholly different from those in the case at bar. In that very case the Court's opinion referred to several decisions of this Court which clearly disapprove of the introduction of evidence on collateral benefits received by the plaintiff. It called attention to *Ridgeway v. Sayre Elec. Co.*, 258 Pa. 400, 407, where we said: ". . . it has been held uniformly that the defendant cannot show, either as a bar to the action or in reduction of damages, that the injured person received, or is entitled to receive, compensation for his injuries in the form of insurance or otherwise."

Moreover, this principle was reaffirmed in the case of *Moidel v. Peoples Natural Gas Company*, 397 Pa. 212 (1959), and as recently as November, 1962, in the case of *Lobalzo v. Varoli*, 409 Pa. 15.

It appears that prior to the accident Miss Boudwin was a person of athletic vigor, participating actively in such sports and entertainments as dancing, swimming, diving and bowling. After the accident she was shut off from these physical pursuits. Defendant's

counsel, in seeking to break down the plaintiff's assertion that physical disability prevented her from enjoying the sports of the past, questioned her as follows: "Q. . . . Isn't it a fact that on the evening of December 11, 1959, you met a friend, a girl, at Charley's Bar and Grill on North Broad Street about 10 p.m., and then you ran across North Broad Street to get a taxicab; then you went in the taxicab to meet a date at the Orpheum Theatre, on Chelton Avenue? A. No, sir. Q. And then you went from there to the Jamaica Room at the School Lane House? Mr. Beasley: [Plaintiff's counsel] Your Honor—By Mr. Monteverde: [Defendant's counsel] Q. Then you spent the evening there until about 12:45 p.m. Is that a fact or not a fact? Mr. Beasley: Your Honor, I have an objection. The Court: I will sustain the objection. That has nothing to do with her athletic contests."

Defendant's counsel was entirely within his cross-examining prerogatives to show that the plaintiff was far more lithe and energetic than she professed to be. The cross-examiner's questioning, however, bounded from the athletic arena into the moral grandstand. Whether Miss Boudwin entered a bar had nothing to do, as the trial judge correctly held, with her athletic activity.

If this incident had ended here, no harm would have been done, and defendant's counsel would still have been entirely within his rights as an earnest advocate believing in his cause. Unfortunately, however, he carried the subject of his attempted questioning into his summation and there sought to discuss the very items the trial judge had excluded. After telling the jury that the trial judge had sustained the objection to his question made by the plaintiff's counsel, he said: "It so happens it was the first of a series of questions along the same line which I couldn't ask because the objections would have been sustained.

"Now, in fairness to you as jurors, or anyone else trying to evaluate the plaintiff's injuries who testifies she can't participate in any social activities, I think if you wanted to find out really how bad a person was injured and you wanted a jury to find out how bad they were injured, you would permit such questions to be asked."

This argument inferred that despite the judge's ruling in favor of plaintiff's counsel, the latter was still wrong. It directly challenged the correctness of the judge's decision. It imputed an incorrect motive to opposing counsel. It reflected on the moral behavior of the plaintiff, which was not in issue.

This Court has stated on many occasions that trial attorneys should be allowed considerable latitude in arguing their cases to the jury. The blacksmith must do a great deal of hammering before he can get his metal into the desired shape and form. The lawyer is engaged in a highly competitive enterprise where he is sometimes confronted with distortion of fact, perjury, and evil designing. He must strike at what he regards as perversion of the truth, but he must keep his hammer on the anvil of the issue. He cannot invent an extraneous dispute and belabor it to the confusion of the jury. Here defendant's counsel was hammering at subjects which were not in the case, indeed were specifically excluded by the judge. This, of course, defendant's counsel could not properly do. In *Nieves v. City of New York,* 100 N.Y.S. 2d 221, 277, App. Div. 357 (1950), the Court said: "Although counsel may justifiably disagree with the court's rulings on the exclusion of evidence, there is no justification for counsel in summation disregarding those rulings, criticizing the rulings, criticizing the objections of opposing counsel which prompted the rulings, asserting that the rules of evidence are artificial and attempting by suggestion and insinuation to get before the jury the

matters excluded. The summation of counsel for the defendant in these respects went beyond the permissible latitude of summation and the court was warranted in setting aside the verdict for the defendant which was possibly obtained by this prejudicial conduct."

There is no suggestion here that defendant's counsel, young, energetic and obviously able, was consciously overstepping the bounds of good trial procedure. His zeal merely went one step beyond his good judgment. This is all pointed out so that the next trial will be confined to the question strictly in issue to the end that justice will be done to all concerned.

Judgment reversed with a venire facias de novo.

Mr. Justice COHEN concurs in the result.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Plaintiff recovered a jury's verdict of $16,000; the lower Court refused to grant plaintiff a new trial. This Court reverses and orders a new trial on two grounds: (1) because counsel for defendant asked plaintiff on cross-examination whether she had received Workmen's Compensation, and her answer was "yes"; and (2) "on the ground that the verdict inadequately covered her injuries which impaired her vision and affected her spinal column to the extent that she has been unable to work at gainful employment ever since the accident."

The question as to Workmen's Compensation was asked—as the trial Judge clearly pointed out at the time it was asked, and also in his charge to the jury—not to mitigate damages, but to attack plaintiff's credibility.

Plaintiff's credibility was certainly doubtful. She testified that she had continuous and permanent pain in her neck as a result of the accident, and one of her

doctors, who examined her *four years after* the accident, testified that she had a hair line fracture of a bone in her neck. On the other hand, none of her attending physicians found any objective evidence of an injury to her neck or spinal column, or any permanent disability. Furthermore, one of her doctors within six months after the accident advised her to go back to work, but she said she was unable to do so.

No question was asked by defendant's counsel as to *the amount* of Workmen's Compensation she had received, or for what length of time it had been paid. Plaintiff's counsel had objected to any question concerning Workmen's Compensation, but after his objection had been overruled produced a witness who testified (a) that plaintiff had received Workmen's Compensation disability benefits from October 25, 1957 until November 24, 1960, and (b) these payments were made in the belief that plaintiff was totally disabled, and (c) her case for further compensation was still being considered. This question, especially in the light of plaintiff's answering testimony, was obviously harmless error;* indeed, the sum total of the evidence on this point not only supported but materially aided plaintiff's claim that she was permanently disabled. Plaintiff did not ask for the withdrawal of a juror; she took her chances on the verdict and *under the circumstances of this case* should not now be permitted to complain and demand a new trial.*

Even more important, *Rice v. Shenk*, 293 Pa. 524, 143 A. 231, is directly and specifically on point and holds that an identical question was harmless error.**

---

* Few cases are tried without some error, and if new trials are granted in cases where harmless error appears, litigation instead of being speeded and reduced (which I have so ardently advocated) will be further retarded and increased.

** See to the same effect, *Sperry v. White Star Lines, Inc.*, 315 Pa. 361, 172 A. 646.

*Lobalzo v. Varoli,* 409 Pa. 15, 185 A. 2d 557, and *Moidel v. Peoples Natural Gas Company,* 397 Pa. 212, 154 A. 2d 399, are, on their facts, distinguishable.

The majority opinion also expressly or impliedly holds that a new trial should be granted for the additional reason that the verdict was inadequate. To support this position the majority refers only to the testimony *of plaintiff herself,* and completely overlooks and fails to state that her alleged inability to work and whether all her alleged total loss of wages was due to the accident, raised considerable doubt, and most important that her testimony was denied in its most important, aspects, i.e., the permanency of her neck (or spinal) injuries,* by several of her own medical experts. The jury and the trial Judge saw and heard the witnesses and consequently are undoubtedly in a better position than an appellate Court to determine credibility. Under the aforesaid facts and circumstances it is contrary (1) to common sense and (2) to the law (a) to resolve all doubts in her favor, and (b) to ignore the testimony of plaintiff's own doctors and upset a jury's verdict (in her favor) "for inadequacy", when the amount of that verdict was not only very substantial but exceeded all the back wages plaintiff said she lost and all the expenses she said she had incurred, and likewise included several thousand dollars for pain and suffering.

Where the evidence of negligence or contributory negligence, or the evidence pertaining to injuries or to loss of wages or earning power or to medical and other expenses, is conflicting or not free from doubt, a trial Judge has the power and discretion to uphold the time-honored right of a jury to render a compromise verdict and to sustain a verdict which is substantial, even

---

* The temporary impairment of her vision was concededly relatively unimportant.

though it is less than the plaintiff would likely have been entitled to if her testimony and all the evidence favorable to her had been believed. *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150; *Ischo v. Bailey,* 403 Pa. 281, 289-290, 169 A. 2d 38. In *Ischo v. Bailey,* the Court, after analyzing and reviewing numerous cases of alleged inadequate verdicts, said (page 290) : " 'In considering the action of the lower Court in granting or refusing a new trial, the law is clearly settled—an appellate Court will affirm unless there has been clear abuse of discretion or an error of law. Wargo v. Pittsburgh Railways Co., 376 Pa. 168, 101 A. 2d 638; Karcesky v. Laria, 382 Pa. 227, 114 A. 2d 150; Smith v. Allegheny County, 377 Pa. 365, 105 A. 2d 137; Edelson v. Ochroch, 380 Pa. 426, 111 A. 2d 455; Foster v. Waybright, 367 Pa. 615, 80 A. 2d 801.

" 'In Karcesky v. Laria, 382 Pa., supra, the Court said (page 235) : " ' "When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere: Schwartz v. Jaffe, 324 Pa. 324, 188 A. 295; Pretka v. Wilson, 325 Pa. 491, 190 A. 722. When a trial court refuses to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action. . . ." ' " '

"In Karcesky v. Laria, supra, the Court said (page 235) : 'Where the verdict is, as here, substantial, a new trial "for inadequacy" should be granted only when the trial court is convinced the verdict is so unreasonably low as to present a clear case of injustice even in the light of the doubtful negligence of defendant or the doubtful contributory negligence of the plaintiff, or both: Cf. Takac v. Bamford, 370 Pa. 389, 88 A. 2d 86; Nikisher v. Benninger, 377 Pa., supra; Carpenelli v. Scranton Bus Company, 350 Pa., supra.' "

For these reasons I would affirm the judgment.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.