Ritson, Appellant, *v.* Don Allen Chevrolet, et al.

Argued November 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

T. *Cooper*, with him *George E. Schumacher*, and *Schumacher & White*, for appellant.

*William K. Herrington*, with him *Weis & Weis*, for appellee, Don Allen Chevrolet.

*Herbert Grigsby*, with him *Jane L. Boucher*, and *Thomson, Rhodes & Grigsby*, for appellee, Hertz Corporation.

*Thomas A. Lazaroff*, with him *Meyer, Darragh, Buckler, Bebenek & Eck*, for appellee, General Motors Corporation.

OPINION BY HOFFMAN, J., March 31, 1975:

The sole issue before the Court is whether testimony of appellant's expert witness was properly excluded by the court below. After excluding the evidence, the trial court granted appellees' motions for a compulsory nonsuit.

In January, 1970, appellant, Thomas Ritson, purchased a used 1969 Chevrolet Impala from Don Allen Chevrolet, a Pittsburgh area dealership. Hertz Corporation sold the Impala to Don Allen Chevrolet after the vehicle had been driven approximately 19,000 miles.

During the morning hours of October 26, 1970, appellant was driving home after attending a Halloween party in the East Liberty section of Pittsburgh. According to appellant's testimony, he made a right hand turn onto New Arlington Avenue from Carson Street. He turned the wheel of his Impala slightly to the left. At that point he lost control of the wheel for a split second. Even after appellant released the accelerator pedal and applied the brakes, the engine continued to race. He could not stop the car in time to avoid striking the front end of another automobile. The appellant was traveling at an estimated 25 miles per hour at the time of the accident. The roadway was wet, but the weather was clear and the visibility was good.

After several hours at South Side Hospital where appellant was treated for lacerations and head injuries, he was admitted to Allegheny General Hospital. He remained in Allegheny General Hospital for eleven days.

The automobile was towed to Gumbel's Body Shop. A fender and the front bumper were removed at the garage. Three weeks after the accident, on November 16, 1970, Wilbert Messmer, an automobile mechanic, examined the Impala to determine if any mechanical defects could have caused the sudden racing of the engine and the appellant's losing control of the steering of the car. After the expert's examination, but prior to trial, the owner of the garage died and the shop was closed at the time of trial.

Appellant filed an action in trespass against Don Allen Chevrolet, based on Section 402A of the Restatement of Torts, 2d. He alleged that because the Impala was sold in a defective and unreasonably dangerous condition the appellee was strictly liable for appellant's damages. Hertz Corporation, the prior owner of the Impala, and General Motors, the manufacturer, were joined as additional defendants. The case came to trial on September 28, and October 1, 1973. After appellant had testified as to the

details of the accident, counsel for appellant called Wilbert Messmer as an expert witness.

After the court found that the expert was qualified to testify as to the cause of the accident, an offer of proof was made at side bar. The appellant wanted to introduce evidence that the motor mounts[1] were defective and that the defect caused the engine to rotate far enough to affect the operation of the accelerator cable, thereby causing the accident. Appellees objected because there was no evidence of the method used to transport the automobile from the scene of the accident to the garage or of the manner in which the automobile was stored during the three week period after the accident, before the appellant's expert observed the car. The court ruled that because there was no proper testimony of the care and custody of the vehicle between the date of the accident and the date of the examination, the expert's testimony was inadmissible. Therefore, because the appellant presented no evidence as to a defect in the manufacture of his automobile, the court granted appellees' motions for

1. The Record includes a letter from General Motors Corporation, dated March, 1972, to owners of a number of models of Chevrolets that gives the following description of motor mounts and the problem that some drivers had experienced: "Your vehicle is equipped with two front engine mounts; one positioned on each side of the engine. An engine mount consists of a rubber cushion sandwiched between two metal plates. It supports and cushions the engine. Since the center portion of an engine mount is made of rubber, it is subject to fatigue from constant flexing during vehicle operation and from engine compartment heat . . .

"The possible safety hazard . . . exists when, as a result of fatigue or collision damage, the rubber portion of an engine mount has separated. When this condition exists, very rapid acceleration of the vehicle from a stop or from very low speed can result in the engine rotating sufficiently to interfere with the accelerator linkage and to cause the throttle to be held open temporarily . . . A sharp left turn during forward acceleration can increase the possibility of engine rotation if the left engine mount had separated."

a compulsory nonsuit. This appeal is from that order.

The lower court stated that *Semet v. Andorra Nurseries, Inc.*, 421 Pa. 484, 219 A.2d 357 (1966), compelled the exclusion of the expert testimony. In *Semet,* the appellant wanted to introduce an expert witness to testify as to the condition of a ladder from which appellant had fallen: "Fifty-two days after this accident Martin Alkon, a registered Engineer, went to the scene and examined a ladder to which he had been directed by *unnamed* employees of defendant Andorra Nurseries, Inc. Photographs were taken of this ladder. . . . The lower Court properly held that this testimony and the accompanying photographs were inadmissible. There was no legally admissible testimony that the ladder examined by Alkon and the ladder photographed was the ladder from which plaintiff fell." 421 Pa. at 487, 219 A.2d at 359. By way of dictum, the Court stated further that ". . . even if this were proven to be the same ladder, the proffered evidence would still be inadmissible. Fifty-two days passed before the ladder was examined. *There was no testimony that the condition of the ladder had not changed from the time of the accident."* 421 Pa. at 487-88, 219 A.2d at 359. (emphasis added).

The law is clear that to introduce evidence as to the condition of a physical object " 'evidence of its condition at a prior or subsequent time is admissible if accompanied by proof that it has not changed in the meanwhile.' " *Brandon v. Peoples Natural Gas Co.,* 417 Pa. 128, 133, 207 A.2d 843, 846 (1965), citing Henry, *Pennsylvania Evidence,* Vol. 1, §33, p. 60 (4th ed. 1953). In *Topelski v. Universal South Side Autos, Inc.,* 407 Pa. 339, 180 A.2d 414 (1962), the Supreme Court discussed the testimony given by an expert mechanic relating to a brake failure: " 'The evidence had been objected to as too remote. The mere passage of time, unless considerably greater than twenty days, cannot change the condition of the brakes. The greater the passage of time, however, the greater the

opportunity there is to deal unfairly with the evidence, and cause the evidence to reflect a condition that did not actually exist at the time of the accident. This could also be accomplished in a few minutes. . . . In the case before us, . . . [t]here was no testimony to the effect that the automobile had been used after the accident. There was evidence to the effect that the automobile was not in condition to be used before the inspection. . . . The testimony provided evidence from which the jury might infer that the condition of the vehicle had not changed, through use or otherwise, during the twenty days.' " 407 Pa. at 347-48, 180 A.2d at 418. Similarly, the Supreme Court has recently upheld the admissibility of photographs and expert testimony where some dismantling of a truck had taken place after the accident, but where the expert testified that "there was no evidence that indicated that any changes had been made so far as the copper portion of the air supply line was concerned." *Woods v. Pleasant Hills Motor Company,* 454 Pa. 224, 230, 309 A.2d 698 (1973).

Finally, an expert can seldom offer an opinion with absolute certainty. The failure of an expert to rule out all possible causes of a condition is not a basis for excluding the testimony, since to require such a high degree of certainty would deny the jury copious relevant evidence. "A precise scientist who bases his opinion on an appraisal of probabilities is nonetheless an expert. In our view his opinion deserves jury consideration." *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 181, 242 A.2d 231 (1968). Once a threshold showing is made that the condition of an object has remained the same or that an expert has some basis in fact for his opinion, the evidence is admissible; the weight of the evidence is then a matter for the jury. *Griffith v. Clearfield Truck Rentals, Inc.,* 427 Pa. 30, 233 A.2d 896 (1967) ; *Flavin v. Aldrich,* 213 Pa. Superior Ct. 420, 250 A.2d 185 (1968).

In the instant case, the expert testified out of the presence of the jury that, because of the observed condition of the motor mounts and the presence of a build-up of grease and oil, he concluded that the motor mounts had not been tampered with since the time of the accident. Further, his testimony indicated that the motor mounts that he removed for purposes of inspection were the original motor mounts installed by General Motors. He acknowledged the possibility that the towing of the automobile might have damaged the mounts, but he doubted that fact, based on his experience of how a car would have been towed from the scene of an accident and from his examination of appellant's automobile. He agreed that there was a possibility that the automobile might have been dropped after having been placed on jacks; but he saw no evidence of such an occurrence at the time that he examined the car.

Appellant's expert testified to sufficient facts as to the condition of the motor mounts so that the issue should have been submitted to the jury. *Andorra Nurseries, supra,* dealt with the failure to introduce *any* evidence that the physical object had not changed since the accident. The expert in the present case testified that the mounts had not been tampered with and that they were not damaged since the accident. He testified to ample underlying observations of tangible data that would have enabled the jury to determine the weight to be given his conclusion that the damaged motor mounts were causally connected with the accident.

Therefore, the order of the court below is reversed and a new trial is granted.

JACOBS, J., dissents.