368 A.2d 819

Samuel H. RUBINSTEIN and Grace
Rubinstein, his wife

v.

J. E. KUNKEL CO., Appellant,
and
James Fuel & Supply Co., Inc.
and Sun Oil Co.

Superior Court of Pennsylvania.

Argued Sept. 15, 1976.

Decided Dec. 15, 1976.

476

L. Carter Anderson, Philadelphia, for appellant.

Jonathan Wheeler, Philadelphia, with him Edwin L. Scherlis, Philadelphia, for appellees.

John J. Baulis, Philadelphia, for appellee, Sun Oil Co.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

██ In 1964, appellant converted appellee-Rubinstein's home furnace from gas to oil heat.[1] In 1967, the furnace failed to operate correctly, causing extensive soot damage throughout the house. Appellant contends that the evidence was insufficient to prove that it was negligent or that, if it were negligent, its negligence was the proximate cause of the damages to the plaintiff's home. Second, appellant claims that appellee-Sun Oil Company ("Sun" hereinafter), which serviced the furnace from March 1967, until the accident, should be found liable for its negligent maintenance of the furnace.[2]

In 1964, appellant contracted with the plaintiffs to convert the gas burning furnace in their Bryn Mawr, Montgomery County home to an oil fired system. Appellant's service manager designed a system with two separate conbustion chambers divided by a firebrick wall. Appellant subcontracted with a masonry firm to install the unit; after installation, however, appellant's service manager inspected the system and checked its operation. Appellant maintained plaintiffs' heating system until August, 1965. Plaintiffs then used the James Fuel & Supply Company,[3] from August, 1965, until March, 1967, when they contracted with Sun. During that period of

1. For purposes of clarity, we refer to the Rubinsteins as plaintiffs throughout this opinion.

2. Appellant also contends that the damages awarded by the court are excessive, and should have been limited to an itemization of $44,369.75. Specifically, appellant contends that certain evidence relating to damages suffered by the plaintiffs should not have been introduced into evidence. As correctly stated by the plaintiffs, appellant did not object at trial. Therefore the issue is waived. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

3. A copy of the complaint was filed against James Fuel & Supply Co., but James did not answer or appear because the company was in bankruptcy.

time, plaintiffs reported no malfunctioning of the system.

In December, 1967, the plaintiffs left home for a skiing vacation in the Poconos. Upon their return, they discovered the interior of their entire house covered with a film of soot and oil. As testified at trial by Mrs. Rubinstein, ". . . it was so thick that as you walked on the floor you left footprints, and if you put something down where there had been something on the table and you picked it up you would have a ring, everything was just greasy.

"Q. . . .—when you say 'greasy,'—
"A. Oily. The oil had permeated the entire house.
"Q. . . . did you walk through every room?
"A. Yes. Well, I though first it was just on the first floor. Then we went through the first, to the second, third, and I opened doors and I was amazed to find my linens all covered with oil. Up on the third floor in the storage cedar closet, the closet I couldn't imagine how it got in there, but it was all covered with oil."

As a result, the plaintiffs had to discard almost all of their furniture and personal belongings and to renovate and redecorate their home.

The plaintiffs filed an action in trespass against appellant, James Fuel & Supply Co., and Sun, on April 1, 1969. Prior to trial, Sun and plaintiffs entered into a joint-tortfeasor settlement. At trial, Sun pleaded a release in which the plaintiffs reserved their rights against the other defendants, and agreed to a pro rata reduction of their damages should the factfinder hold both Sun and appellant liable. The parties waived a jury trial and trial commenced on June 3, 1975. The lower court found only appellant liable in the amount of $67,704.75. Appellant's exceptions were denied on December 31, 1975. This appeal followed.

## I.

Appellant challenged the sufficiency of the evidence to prove its negligence and to prove proximate cause.

### A. Negligence

The gravamen of the plaintiffs' complaint was that the appellant negligently designed the furnace. The appellant argues that "[t]he only evidence of the original condition of the furnace is the testimony of Louis Battista, who was Kunkle's service manager at the relevant time. . . . Mr. Battista did not know of his own information whether a complete partition had been constructed pursuant to his directions. . . .

"We know that by the time of the accident the Minneapolis-Honeywell controls had been replaced by White-Rogers controls . . . but we have no other information about any other changes or modifications. . . . We know that the partition, at the time of the accident, was not a complete one, but plaintiffs' expert conceded that it might have been altered since it left the control of [appellant]." There was ample testimony by plaintiffs' expert concerning the inadequate structure of the fire wall which would support a finding of negligence. Therefore, the only issue is whether evidence was sufficient to prove the unchanged condition of the furnace from the time it was installed by appellant until the time of the accident.

██ ██ Initially, "[a]ppellate review of the record of a trial before a judge without a jury is limited to a determination of whether the findings of fact of the court below are supported by competent evidence and whether or not the lower court committed error of law." *E. I. duPont de Nemours & Co., Inc. v. Berm Studios, Inc.*, 211 Pa.Super. 352, 354, 236 A.2d 555, 556 (1967). See also, *Trilog Associates, Inc. v. Famularo*, 455 Pa. 243, 314 A. 2d 287 (1973); *Van Products Company v. General Welding and Fabricating Company*, 419 Pa. 248, 213 A.2d 769

(1965). Further, when an appellate court reviews a claim of sufficiency of the evidence, it must view the evidence in a light most favorable to the verdict winner. *Krobot v. Ganzak,* 194 Pa.Super. 49, 166 A.2d 311 (1960). At the same time, a party cannot prevail if the evidence is so insubstantial that the factfinder must speculate about a factual issue. *Nationwide Mutual Insurance Company v. Mazza,* 233 Pa.Super. 244, 334 A.2d 697 (1975). Further, as summarized in *Ritson v. Don Allen Chevrolet,* 233 Pa.Super. 112, 116, 336 A.2d 359, 362 (1975), "[t]he law is clear that to introduce evidence as to the condition of a physical object ' " " 'evidence of its condition at a prior or subsequent time is admissible if accompanied by proof that it has not changed in the meanwhile.' " ' *Brandon v. Peoples Natural Gas Co.,* 417 Pa. 128, 133, 207 A.2d 843, 846 (1965), citing Henry, *Pennsylvania Evidence,* Vol. 1, § 33, p. 60 (4th ed. 1953)." Cf. *Woods v. Pleasant Hills Motor Company,* 454 Pa. 224, 309 A.2d 698 (1973). However, in cases in which an expert witness first examines an object of legal controversy well after its construction, the expert may be unable to rule out all possible causes of its malfunction. We have never required a standard of absolute certainty: "The failure of an expert to rule out all possible causes of a condition is not a basis for excluding the testimony, since to require such a high degree of certainty would deny the jury copious relevant evidence. 'A precise scientist who bases his opinion on an appraisal of probabilities is nonetheless an expert. In our view his opinion deserves jury consideration.' *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 181, 242 A.2d 231, 233 (1968). Once a threshold showing is made that the condition of an object has remained the same or that an expert has some basis in fact for his opinion, the evidence is admissible; the weight of the evidence is then a matter for the jury. *Griffith v. Clearfield Truck Rentals, Inc.,* 427 Pa. 30, 233 A.2d 896 (1967); *Flavin v. Aldrich,* 213 Pa.Su-

per. 420, 250 A.2d 185 (1968)." *Ritson v. Don Allen Chevrolet*, supra, 233 Pa.Super. at 117, 336 A.2d at 362.

 The plaintiffs' proof included testimony that "the intermedial wall was made out of refractory brick" and was immobile because secured with cement, that "you don't normally remove brick for normal maintenance, and put it back in again in a combustion chamber configuration," and that the plaintiffs were never billed for alterations to the intermedial wall. That evidence is sufficient to sustain the lower court's finding that "[t]he design of the chambers was basically unchanged from the time of its installation until the time of the accident. The gap in the fire wall existed because [appellant] did not completely build up the wall when installing the system."

### B. Proximate Cause

Appellant also contends that, even if the design of the intermedial wall was inadequate, the plaintiffs failed to prove that the defect caused the accident. Rephrased, appellant claims that plaintiffs did not disprove alternative explanations of the accident.

 Pennsylvania has adopted the Restatement (Second) of Torts, §§ 431 and 432 on legal cause. *Whitner v. Lojeski*, 437 Pa. 448, 263 A.2d 889 (1970); see also, *Noon v. Knavel*, 234 Pa.Super. 198, 339 A.2d 545 (1975), allocatur granted 234 Pa.Super. xxxviii. Thus, in an action in trespass, a plaintiff must prove that the defendant's conduct "is a substantial factor in bringing about the harm, . . ." Restatement (Second) of Torts § 431(a). Further, § 432(1) provides that "the actor's negligent conduct is not a susbtantial factor in bringing about harm to another if the harm would have been sustained even if the action had not been negligent." Thus, we must inquire whether the defectively constructed intermedial wall was a substantial factor in bringing about the accident in the plaintiffs' home.

The plaintiffs' expert's theory was: For some reason, the ignition in one chamber failed. A light-sensitive safety cell would normally shut off the fuel supply once the system malfunctioned. Because the intermedial wall did not properly seal the malfunctioning chamber from the other chamber, the light from the "hot" chamber prevented the triggering of the safety device, leading to a build-up of unburned oil-vapor. Subsequently, the accumulated vapor was ignited by the heat in the other chamber (a process described as "cross-ignition"), the heat transfer being more likely due to the poor seal of the intermedial wall. The cross-ignition then caused a series of "puff-backs", that is, the emission of incompletely burned oil-vapors that sent soot throughout the house and the process repeated itself every time the thermostat called for additional heat. Appellant contends that: "Plaintiffs proved that cross-ignition resulting from the incomplete partition was one of several possible causes of the accident, but there is not one single fact in evidence to support the opinion that this cause was more likely than the others. On the contrary, plaintiffs' expert admitted that the 'puff-backs' could have occurred without 'cross-ignition' and that this was a relatively common occurrence in single chamber furnaces where cross-ignition is impossible. Such evidence as offered by the plaintiff herein fails to meet the legal requirements for circumstantial proof of causation." Appellant has taken one fact out of context and suggested that we substitute our own factfinding for that of the lower court which credited the expert's testimony. Further, when the expert's testimony is read in context, it is clear that he did not relinquish his view of the cause of the accident:

"Q. [by counsel for appellant]:
So isn't it correct then that in those 50 to 100 other cases which you have seen there was a delayed ignition and there was a back-puff without any cross ignition from another combustion chamber?

"A. No other burner, that's true. . . .

\* \* \* \* \* \* \* \*

"Q. . . . You said one of the possibilities was because it became ignited from the other chamber across the top of the partition between the two. Now you have also said that one of the ways that this commonly occurs —which you have seen on many other occasions—is that it simply will ignite from its own ignition system, but it ignites late and that causes a back-puff.

"Now my question to you is: Can you say which occurred in this case and, if you can say, how do you base that? . . .

\* \* \* \* \* \* \* \*

"Q. Okay. Then [it] could have pumped oil in there for 35 seconds and then ignited by its own warp; is that correct?

"A. Is it possible?

"Q. Yes, is it possible.

"A. Well, it's possible that—anything is possible in that case.

"Q. You are saying it is possible?

"A. It could have, it might have.

"Q. Yes.

"A. On that basis, it might have once or twice, I don't think it continued to do it though.

"Q. *Well, you are saying it is possible that's what happened?*

"A. *It may have a couple of times in the beginning. It's hard to say.*

"Q. *In the 50 to 100 prior back-puffs which you had experience with, and that is in fact the most likely cause, is it not?*

"A. *Well, they don't continue, they don't repeat themselves.*

"Q. But it causes a back-puff; is that right, sir?

"A. Oh, yeah, varying degrees of it, some of them get pretty violent.

"Q. But if the back-puff is sufficient to blow openings in the side of the chamber or boiler, that is all you need, isn't it? Then the soot can be pumping out of there for days on end; isn't that true? You only need one back-puff; isn't that right?

"A. One back-puff.

"Q. To cause damage?

"A. *Mild damage,* one—

"Q. Well, suppose there was one back-puff and it blew open the cleanout doors and thereafter the furnace operated perfectly for several days while the Rubinsteins were away. It could still pump all this soot up into the house those several days? It wouldn't take another back-puff, would it?

"A. *That's an awful lot of soot. In my opinion, I don't think so.*" (Emphasis added).

That is, the expert believed that the amount of soot disproved appellant's theory of the accident. The lower court credited that evidence. Thus, plaintiffs introduced sufficient credible evidence that the defective design of the intermedial wall was a "substantial factor" in causing the extensive damage to their home.

## II.

Appellant also contends that the lower court erred in not holding Sun liable for negligent maintenance of the furnace. There is no dispute that Sun was responsible for servicing the furnace from March, 1967, until the accident.

Appellant argues that the plaintiffs' theory of the cause of the accident *"presupposes* a malfunction of one

oil burner (but not both)." In the words of plaintiffs' expert witness:

" 'In my opinion it was my belief that one burner malfunctioned; in other words, it didn't want to fire properly and did not ignite unto itself with its own set of electrodes and its own system; but because of the gap in between the two chambers and the fact that the vapor —this is a fine mist, this is a vapor—from the one misfiring was able to ignite from the fire of the burner on the other side.' "

The plaintiffs did not offer proof that appellant was responsible for the malfunction of the firing device. Appellant suggests that because Sun serviced the furnace in 1967, and because there was "clear and unrebutted [testimony] that the original Minneapolis-Honeywell electrical control installed by [appellant] had been replaced before the accident, with White-Rogers controls . . . the wiring of which was found by plaintiffs' expert to be 'sloppy' . . ., 'very poorly installed and maintained' . . . with an 'uncovered splice' . . . " that Sun must also be found negligent. However, neither plaintiffs nor appellant offered any proof that Sun had done the replacement of controls or maintained the system improperly.[4] If the system were improperly maintained and appellant now seeks exoneration on that basis, it was for the appellant to show that it was Sun, not James Fuel & Supply Co., that was responsible. Thus, we agree with the finding of the lower court that "[t]here is insufficient evidence to determine the cause of the original failure to ignite in one of the chambers."

4. Appellant suggests that we ought to apply the doctrine of res ipsa loquitur to the instant facts. A review of § 328D of the Restatement (Second) of Torts makes clear that it is inapposite to the facts of this case: ". . . It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when . . .
"(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence . . ." There simply was no testimony which would completely exclude other causes.

Because the evidence of appellant's negligence was sufficient and because there was no evidence of appellee-Sun's negligence, we affirm.

VAN der VOORT, J., concurs in the result.