444 A.2d 135

Richard R. DENARDO

v.

Daniel C. CARNEVAL, D.O.

Appeal of Daniel C. CARNEVAL, D.O.

Appeal of Richard R. DENARDO.

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed April 12, 1982.

Judgment against defendant affirmed; remanded for new trial on issue of damages.

486

James T. Marnen, Erie, for appellant in No. 785 and for appellee in No. 786.

James D. McDonald, Jr., Erie, for appellant, in No. 786 and for appellee in No. 785.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

Richard R. DeNardo filed a complaint in trespass against Doctors Osteopathic Hospital and Daniel C. Carneval, D.O., in the Court of Common Pleas of Erie County in which he alleged that on or about April 9, 1975 he was admitted to Doctors Osteopathic Hospital with a chief complaint of right hip pain, right lower back pain and right leg pain with radiation to the knee accompanied by chills and fever. He alleged further that on April 29, 1975, while so hospitalized, Daniel C. Carneval, D.O., an individual engaged in the practice of medicine and surgery, performed a right retro-peritoneal exploration (in the psoas area) with intra-abdominal exploration resulting in drainage of an apparent retro-peritoneal abscess. Plaintiff was discharged from Doctors Osteopathic Hospital on May 7, 1975.

He further alleged that his symptoms returned; he was readmitted to the hospital on June 7, 1975 and on June 9, Dr. Carneval again performed a retroperitoneal exploration on the right with re-exploration of the right psoas abscess and insertion of irrigating tubes and drains. He was discharged from the hospital on July 7, 1975 and admitted to a different medical facility, Hamot Medical Center in Erie, the same day. While there, complete gastrointestinal tract studies were performed which showed constrictive narrowing in the terminal ileum. An exploratory laparotomy was performed on July 14, 1975 including resection of the terminal ileum

and ascending colon and exploration of the retroperitoneal area with drainage of the abscess. He was discharged from Hamot Medical Center July 29, 1975.

The thrust of the complaint filed by Richard R. DeNardo is that while he was being treated by Dr. Carneval at Doctors Osteopathic Hospital, he was suffering from regional ileitis with abscess formation involving the terminal cecum and the ileum with the fistulous tract extending into the right ileopsoas space, which in turn created a right ileopsoas abscess. He alleges further that this problem was ultimately correctly diagnosed by the treating physicians at Hamot Medical Center during his hospitalization there from July 7 through August 21, 1975.

In Count I of his complaint he alleged that the negligence of Dr. Carneval consisted of failing to properly diagnose and treat his condition and of failing to secure a reliable evaluation of his condition including complete studies of his gastrointestinal tract. He set forth various medical expenses that he incurred in excess of $10,000.00 and lost wages from his occupation as a teacher in excess of $1,700.00. Count II of his complaint set forth similar allegations against the Doctors Osteopathic Hospital. The complaint was filed September 9, 1976.

An answer was filed on behalf of Daniel C. Carneval and Doctors Osteopathic Hospital filed a motion for summary judgment. By order dated April 18, 1978 the Honorable Lindley R. McClelland denied the motion for summary judgment. Subsequently, however, on October 31, 1978 all parties by stipulation agreed that Doctors Osteopathic Hospital be discharged from the suit and the court approved such stipulation.

The matter proceeded to trial, non-jury, before the Honorable James B. Dwyer, President Judge, Orphan's Court Division who on November 6, 1978 found "in favor of the plaintiff in the amount of $7,500.00." Exceptions were filed to the verdict by both Richard R. DeNardo and Daniel C. Carneval which exceptions were dismissed May 31, 1979 by the Erie County Court *en banc* including Judges Dwyer,

McClelland and the Honorable William E. Pfadt. Judgment was duly entered on the verdict and both parties have appealed to our court.

I.  IS EXPERT TESTIMONY THAT A FAILURE TO PERFORM CERTAIN DIAGNOSTIC PROCEDURES DEVIATES FROM THE ACCEPTED STANDARD OF CARE SUFFICIENT TO PROVE SUCH DEVIATION WHEN IT IS SHOWN THAT SUCH EXPERTS IN THEIR OWN PRACTICE EITHER DID NOT PERFORM SUCH PROCEDURES OR OBTAINED AN INCONCLUSIVE OR INCORRECT DIAGNOSIS OF THE PLAINTIFF'S ILLNESS BY PERFORMING SAME?

The thrust of the first question raised by Dr. Carneval in this appeal is that he was not negligent in his treatment of Mr. DeNardo and that plaintiff's evidence did not establish medical malpractice.

It would be instructive to determine the test before us and our scope of appellate review in this area. In *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963) our supreme court said:

In considering this contention certain well settled principles in this area of the law must be kept in mind: (a) in the absence of a special contract, a physician neither warrants a cure nor guarantees the result of his treatment . . .; (b) 'A physician who is not a specialist is required to *possess* and *employ* in the [diagnosis and] treatment of a patient the skill and knowledge usually possessed by physicians [of good standing] in the same or a similar locality giving due regard to the advanced state of the profession at the time of the treatment; and in employing the required skill and knowledge he is also required to exercise the care and judgment of a reasonable man' . . .; (c) the burden of proof is upon the plaintiff to prove either (1) that the physician did not possess and employ the required skill or knowledge or (2) that he did not exercise the care and judgment of a reasonable man in like circumstances . . .; (d) the doctrines of *res ipsa loquitur* and exclusive control are not applicable in this area of the law . . .; (e) in malpractice cases which involve an appraisal of

the care and skill of a physician a lay jury presumably lacks the necessary knowledge and experience to render an intelligent decision without expert testimony and must be guided by such expert testimony . . .; (f) the *only* exception to the requirement that expert testimony must be produced is 'where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even non-professional persons * * *' . . .; (g) a physician is not liable for an error of judgment . . .; (h) if a physician employs the required judgment and care in arriving at his diagnosis, the mere fact that he erred in his diagnosis will not render him liable, even though his treatment is not proper for the condition that actually exists (*Richards v. Willard*, 176 Pa. 181, 35 A. 114 (fracture as a sprain); *Duckworth v. Bennett* [320 Pa. 47, 181 A. 558], supra, (fracture as arthritis); *Ward v. Garvin* [328 Pa. 395, 195 A. 885], supra, (wrong diagnosis of injury to foot).

*Id.,* 412 Pa. at 98–100, 194 A.2d at 170–171 [1] (footnotes and citations omitted).

In *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971) the supreme court discussed the test for determining whether a doctor's testimony was legally competent evidence. The court said:

. . . As we said in *Menarde v. Philadelphia Trans. Co.,* 376 Pa. 497, 103 A.2d 681 (1954), summarizing the case law on the subject:

'* * * [T]he expert has to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required

---

1. In *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981) (Opinion by Mr. Justice Nix) our supreme court held that *res ipsa loquitur* is applicable in medical malpractice cases. See *Gilbert v. Korvette's, Inc.,* 457 Pa. 602, 327 A.2d 94 (1975), where our supreme court adopted the Restatement (Second) of Torts § 328D formulation of *res ipsa loquitur.*

standard of proof and does not constitute legally competent evidence (citing cases).'

The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a medical expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that that condition was legally caused by the defendant's conduct.... Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.

*Id.,* 442 Pa. at 485, 276 A.2d at 535.

Our scope of review of the record of a trial before a judge without a jury was clearly set forth in *Rubinstein v. J. E. Kunkel Co.,* 244 Pa.Super. 474, 368 A.2d 819 (1976):

Initially, '[a]ppellate review of the record of a trial before a judge without a jury is limited to a determination of whether the findings of fact of the court below are supported by competent evidence and whether or not the lower court committed error of law.' ... Further, when an appellate court reviews a claim of sufficiency of the evidence, it must view the evidence in a light most favorable to the verdict winner.... At the same time, a party cannot prevail if the evidence is so insubstantial that the factfinder must speculate about a factual issue.

*Id.,* 244 Pa.Super. at 479–80, 368 A.2d at 822. (citations omitted).

Plaintiff's medical expert witnesses Robert G. Timmons, M.D., and M. Lawrence Brockmyer, M.D., testified that Dr. Carneval breached the standard of care owed by a physician. They both testified that Dr. Carneval failed to recognize following the April 29, 1975 surgery that the source of Mr.

DeNardo's abscess was in the abdomen. They further testified that Dr. Carneval's subsequent failure to conduct proper diagnostic tests, including the barium enema and G.I. series, to better define the source of this problem after the April surgery and again following the reoccurrence of Mr. DeNardo's symptoms in June of 1975 and the performance of a second surgical procedure without that information constituted a breach of the standard of care. As the lower court stated in its *en banc* Opinion dated May 31, 1979 "[t]he evidence showed that the defendant should have made further studies and/or tests to determine plaintiff's actual condition at" the point where he returned for further medical treatment following the first operation. Lower ct. op. at 2. The lower court *en banc* further concluded that the defendant's lack of further investigation violated the standard of knowledge and skill possessed by area physicians of good standing and did not demonstrate the care and judgment of a reasonable man.

█ We conclude from our independent review of the record that there was adequate evidence upon which the court could make such conclusions in finding for the plaintiff as it did. We further find that the standards set forth in *Smith v. Yohe, supra,* and *McMahon v. Young, supra,* were met and that under *Rubinstein v. J. E. Kunkel Co., supra* we have determined that the findings of fact of the court below are indeed supported by competent evidence and that no error of law was committed by the lower court. We have viewed the evidence in a light most favorable to the verdict winner in reaching these conclusions.

II.  ARE DAMAGES PROXIMATELY CAUSED BY THE FAILURE TO PERFORM CERTAIN DIAGNOSTIC PROCEDURES WHERE IT IS SHOWN THAT THE LATER PERFORMANCE OF SUCH PROCEDURES BY DIFFERENT PHYSICIANS FAILED TO CONCLUSIVELY OR CORRECTLY DIAGNOSE THE SOURCE OF PLAINTIFF'S SYMPTOMS?

It was, of course, the position taken by Richard R. DeNardo at trial that Dr. Carneval, having breached the standard

of care imposed upon him, thereby increased the risk of physical harm to the patient DeNardo, and that such harm did in fact result. Such was the testimony of Dr. Timmons and Dr. Brockmyer, both noting the prolongation of DeNardo's hospitalization caused by the defendant's breach. They also noted the pain, discomfort and deterioration in DeNardo's condition relating to the delay in proper treatment.

Mr. Justice Kauffman in *Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920 (1981) stated:

> Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a *substantial factor* in bringing about the harm inflicted upon a plaintiff....
>
> ... Section 323(a) of the Restatement (Second) of Torts (1965) has long been recognized as part of the law of Pennsylvania, ... the effect of that section was to relax the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis upon which a jury may find causation: [7]

> [O]nce a plaintiff has demonstrated that defendant's acts or omissions, in a situation to which Section 323(a) applies, have increased the risk of harm to another, such evidence furnishes a basis for the fact-finder *to go further* and find that such increased risk was in turn a *substantial factor in bringing about the resultant harm*; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact.

---

[7]Restatement (Second) of Torts § 323 (1965) provides:

§ 323. *Negligent Performance of Undertaking to Render Services* One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

. . . Thus, medical opinion need only demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct *increased the risk* of the harm actually sustained, and the jury then must decide whether that conduct was a substantial factor in bringing about the harm.

*Id.* 494 at 416–17, 431 A.2d at 923–24.

■ Our review of the record convinces us that plaintiff through his medical expert witnesses demonstrated that defendant's acts or omissions increased the risk of harm to his patient DeNardo, such evidence furnishing a basis for the trial judge, factfinder, to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm.

## III. DOES A TRIAL COURT COMMIT ERROR BY ADMITTING EVIDENCE OF MEDICAL EXPENSES NOT PLEADED IN PLAINTIFF'S COMPLAINT?

■ Dr. Carneval alleges as his third question involved in this appeal that the trial judge erred in admitting plaintiff's exhibits 8, 18 and 19 representing the statement of charges from Hamot Medical Center, statement of charges from Dr. Brockmyer and statement of charges from Dr. Timmons respectively. This was a matter of discretion with the trial judge and no error resulted. The appeal of Daniel C. Carneval is without merit.

Turning to the appeal filed by Richard R. DeNardo we will discuss the second issue raised, having already covered the first and third issues in reviewing the appeal of Dr. Carneval.

## 2. DID THE TRIAL COURT ERR IN FAILING TO AWARD MEDICAL EXPENSES WHICH WERE PROXIMATELY RELATED TO THE DEFENDANT'S NEGLIGENCE BECAUSE THOSE BILLS WERE PAID IN THE FIRST INSTANCE BY A COLLATERAL SOURCE, THE PLAINTIFF'S GROUP MEDICAL INSURANCE CARRIER?

■ Plaintiff argues that the trial court erred in refusing to award damages for medical bills incurred by the plaintiff

494

in his treatment but paid by plaintiff's group medical insurance carrier.

Plaintiff's brief presents the issue as follows:

After the record was closed, the trial court requested that counsel for both parties advise the court whether Blue Cross/Blue Shield had a subrogation claim for the bills paid on the Plaintiff's behalf. Counsel advised the court that there was apparently no subrogation claim. The court then advised counsel that the related bills would not be awarded absent a subrogation claim. That off the record discussion was confirmed in the opinion of the court below. No bills were awarded.

The Plaintiff filed exceptions to the decision of the trial court relating to the Court's refusal to award medical bills because they had been paid by the Plaintiff's group medical insurance carrier. The Court *en banc* denied the Plaintiff's exception stating as follows:

Plaintiff filed exceptions to the trial court's excluding from the Plaintiff's damages the medical and hospital bills paid for by Blue Cross Insurance, since Plaintiff's counsel had informed the Court—at the request of the Court—that Blue Cross did not subrogate its claim. We do not believe that the Defendant should be punished by having to pay to the Plaintiff any sums to which the Plaintiff is not properly entitled to as compensatory damages. Consequently, Plaintiff's Exceptions will also be dismissed.

Brief of Richard R. DeNardo at 40.

We hold that the refusal of the trial court to award medical expenses to the plaintiff was erroneous. We remand for a new trial limited to damages.

■ Pennsylvania law is clear; the victim of a tort is entitled to the damages caused by the tortfeasor's negligence regardless of compensation the victim receives from other sources. *Boudwin v. Yellow Cab Company*, 410 Pa. 31, 188 A.2d 259 (1963); *Lobalzo v. Varoli*, 409 Pa. 15, 185 A.2d 557 (1962). As was well said in *Moidel v. Peoples Natural*

*Gas Company,* 397 Pa. 212, 154 A.2d 399 (1959), "Clearly, the fact that an injured party has received compensation from a source other than the wrongdoer is without relevancy in a suit brought by the injured party against the wrongdoer to recover damages."

In *Trump v. Capek,* 267 Pa.Super. 355, 406 A.2d 1079 (1979), we said:

This is an appeal from an order granting appellee's motion for new trial. Appellee sued appellant in trespass to recover damages sustained when appellee's tractor was struck from behind by appellant's car. The jury returned a verdict in favor of appellant. The question on appeal is whether evidence of payment to appellee under a government pension plan—evidence that both sides agree was inadmissible under the collateral source rule—was so prejudicial that the trial judge's instructions to the jury to disregard it failed to protect appellee's rights adequately.

The lower court sitting *en banc* granted appellee a new trial on the basis of *Palandro v. Bollinger,* 409 Pa. 296, 186 A.2d 11 (1962), in which the Supreme Court held that it was prejudicial—and incorrigible—error for the trial judge to have admitted evidence that the city had paid the plaintiff's salary and medical expenses through disability payments. (The jury had returned a verdict for the defendant). The Court agreed with the lower court that this evidence had undermined the plaintiff's case in the eyes of the jury.

*Id.,* 267 Pa.Super. at 356, 406 A.2d at 1079–80.

Instantly, we had a non-jury proceeding where the lower court not only considered evidence that the plaintiff DeNardo had received Blue Cross and Blue Shield coverage as to some or all of his medical expenses—but refused therefore to award any amount for medical expenses caused by the negligence of defendant Carneval. This was error.[2]

---

**2.** Of course, Blue Cross and Blue Shield may then be entitled to subrogation. See *Associated Hospital Service of Philadelphia v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149 (1981).

Accordingly, we remand this case to the trial court, affirming the judgment in favor of the plaintiff Richard R. DeNardo against the defendant Daniel C. Carneval, D.O. but awarding a new trial on the issue of damages only. The appeal by Daniel C. Carneval is dismissed.

LIPEZ, J., concurs in the result.