597 A.2d 655

**Nancy A. GIGLIOTTI, also known as Nancy Moran, Appellant,**

**v.**

**Mel MACHUCA, Parent and Natural Guardian of Todd Machuca, a Minor.**

Superior Court of Pennsylvania.

Argued April 17, 1991.

Filed Sept. 25, 1991.

Michael C. George, Pittsburgh, for appellant.

Robert J. Marino, Pittsburgh, for appellee.

Before McEWEN, DEL SOLE and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is an appeal from a judgment entered in the Court of Common Pleas of Allegheny County, in favor of appellee, Todd Machuca.[1] On December 15, 1989, a jury returned a general verdict in appellee's favor. Appellant, Nancy Gigliotti,[2] filed timely post-trial motions which were subsequently denied. This appeal followed. For the reasons which follow, we affirm the judgment.

The lawsuit giving rise to this appeal was the result of an automobile collision involving a car being driven by Todd Machuca and a car being driven by Ms. Moran's then fiance, now husband, in which she was a passenger. The vehicle in which Ms. Moran was a passenger was stopped at a stop sign on an off-ramp from Route 19, when it was rear-ended by the Machuca vehicle. Todd Machuca admitted that he had turned his attention away from the road ahead of him, and that this caused him to rear-end the Moran vehicle. The parties are in agreement as to the facts up to that point. However, there is substantial disagreement between the parties as to the severity of the collision and the amount of injury suffered by Ms. Moran. Appellant had a preexisting neck and back condition as the result of an injury she sustained while working as a licensed practical nurse. The work-related injury occurred on September 2, 1985, when Ms. Moran was attempting to administer medication

1. During the pendency of this action, Todd Machuca turned 18 years of age. By stipulation of the parties, the action was dismissed as to Mel Machuca.

2. During the pendency of this action, appellant married Michael Moran. At that time she changed her surname to Moran and will hereinafter be referred to as Ms. Moran.

to a combative patient. The patient pulled on her uniform causing her to suffer a severe cervical strain. Ms. Moran was receiving treatment for this injury up until the present accident occurred, on December 19, 1986. At trial, the jury was presented with numerous expert witnesses who presented conflicting opinions as to the extent of appellant's injuries attributable to the car accident as opposed to her previous work-related injury. The jury returned a general verdict in Todd Machuca's favor.

Appellant has raised the following issues for our consideration.

I. Whether the trial court erred by failing to direct a verdict for Appellant and [sic] liability or, alternatively, failed to enter a judgment NOV in favor of Appellant on issue of liability and order new trial as to damages?

II. Whether the trial courts [sic] charge to the jury violated the collateral source rule and was otherwise prejudicial to Appellant, thus entity Appellant [sic]?

We shall address the issues in the order presented.[3]

Appellant, in her first issue, maintains that the trial court erred by failing to direct a verdict in her favor on the issue of liability. Alternatively, appellant argues that the trial court should have granted her motion for judgment notwithstanding the verdict on the issue of liability and ordered a new trial on the issue of damages. The standard employed by this court when reviewing a denial of a motion for a directed verdict or motion for judgment n.o.v. is the same; this court will reverse the trial court only if it finds

3. Appellee also urges us to quash the appeal because appellant violated Pa.R.A.P. 2154 by failing to include the entire transcript in the reproduced record as requested by appellee in his counter-designation of the contents of the reproduced record. We find it unnecessary to enter sanctions in this case, for while the record is somewhat deficient as to the amount of transcript it includes, the full transcript is available to this court in the case file. We remind the appellant, however, that the rules are mandatory, not directory, and that in appropriate cases we will not hesitate to impose sanctions, including the dismissal of an appeal. See, e.g., Pa.R.A.P. 2188.

an abuse of discretion or an error of law which controlled the outcome of the case. *Timbrook v. Foremost Insurance Co.,* 324 Pa.Super. 384, 471 A.2d 891 (1984). When reviewing the propriety of an order denying a motion for judgment n.o.v. the sole duty of this court is to determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference that can be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Curran v. Philadelphia Newspapers, Inc.,* 376 Pa.Super. 508, 546 A.2d 639 (1988), *appeal denied,* 522 Pa. 576, 559 A.2d 37 (1989).

■ In support of her contention that the trial court erred by denying her motions for a directed verdict and a judgment n.o.v., as to liability, appellant relies upon the arguments that Todd Machuca admitted driving negligently and that the expert testimony reveals that Ms. Moran suffered some injury as a result thereof. The record does support Ms. Moran's argument that Todd Machuca was driving in a negligent manner. Todd, himself, testified that he had turned his attention away from the road ahead of him to talk to one of the passengers in his vehicle. In doing so, Todd Machuca failed to observe the Moran vehicle stopped at the stop sign and subsequently collided with the rear of the vehicle in which Ms. Moran was a passenger. However, negligent conduct alone is insufficient grounds for recovery. It is also necessary that plaintiff prove that the negligent conduct was a substantial factor in bringing about plaintiff's injuries. *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973 (1985). To that end, the jury was presented with conflicting testimony from several medical experts as to what extent, if any, appellant's injuries were caused by the accident in question. With the appropriate standard of review in mind, we shall review the expert medical testimony presented to the jury.

Appellant offered the testimony of five physicians who had, at some point in time, treated her. The first, Dr. Vates, began treating Ms. Moran prior to the automobile

accident. Dr. Vates initially saw her in April 1986 regarding neck and back pain which resulted from the work-related incident. At that time, Ms. Moran had been off work since October 1985. Dr. Vates found that Ms. Moran suffered from tenderness of the vertical angle of the left scapula and limited motion of the neck. He prescribed a treatment of physical therapy and muscle relaxers. One month prior to the automobile accident, Dr. Vates recommended that Ms. Moran return to light-duty work. However, she continued to complain of pain and did not return to even light-duty work. After the automobile accident, Ms. Moran continued to treat with Dr. Vates. She was, at that time, diagnosed as suffering from cervical strain secondary to the automobile accident.

The second physician to testify during appellant's case in chief was Dr. Thomas Ulincy. Dr. Ulincy, a neurologist, prescribed in-patient treatment in April and October of 1987, for cervical traction. Dr. Ulincy, according to the record, offered no expert opinion as to the cause of appellant's injuries.

Dr. Maroon was the third medical expert called to testify on behalf of appellant. Dr. Maroon first examined Ms. Moran in October of 1987, ten months after the automobile accident, with regard to neck and left arm pain. Dr. Maroon testified that appellant told him that she had developed these complaints following a 1985 work-related injury. Dr. Maroon performed a myelogram and CAT scan which revealed degenerative changes at the C5/C6 level of the neck. Dr. Maroon testified that, within a reasonable degree of medical certainty, based upon Ms. Moran's entire history, that the work-related injury was the initial cause of the problems, which were then aggravated by the automobile accident. While Dr. Maroon believed that there was a relationship between the automobile accident and Ms. Moran's complaints of pain, he could not state the degree of that relationship. Dr. Maroon gave appellant the option of surgery but, as he testified, he informed her that there were no guarantees it would help and that her situation was

not a clear-cut case calling for surgery. Surgery was performed on January 18, 1988. Following surgery, Ms. Moran continued to complain of pain in her arm and neck, which Dr. Maroon characterized as markedly atypical and most unusual. Dr. Maroon testified that, at that time, appellant was diagnosed as suffering from emotional overlay and psychiatric problems as the result of the surgery. There was also a subsequent diagnosis of "conversion hysteria"; a condition wherein Ms. Moran complained that her legs were paralyzed, yet there was no objective reason for the paralysis. Testifying as to the significance of appellant's history, Dr. Maroon recalled that Ms. Moran had told him, in her history, that the automobile accident caused only a minimal and temporary increase of pain. Finally, Dr. Maroon testified that following appellant's surgery he could find no objective findings to support the subjective complaints of pain. At that point, according to Dr. Maroon, there was no further treatment he could offer Ms. Moran.

The fourth physician to testify on appellant's behalf was Dr. Stept, of the Shadyside Pain Clinic. Dr. Stept first saw appellant on June 30, 1988, as a self-referral. Dr. Stept commented that it was unusual to see a patient on a self-referral basis, as 95% of the patients at the clinic are referred by other physicians. Dr. Stept testified that he performed several nerve block treatments on Ms. Moran in an attempt to alleviate her pain. The doctor stated that while he believed that she was making significant progress with her treatments, Ms. Moran nevertheless sought treatment from another physician.

The final physician called to testify by appellant was Dr. Samuelson. Of all the doctors to testify, Dr. Samuelson was the only one to state, within a reasonable degree of medical certainty, that appellant's injuries were causally related to the automobile accident. However, there were numerous factors which could have raised serious doubts, in the minds of the jurors, as to the credibility to be given to this doctor's opinion. First, Dr. Samuelson admitted that he had reviewed no diagnostic test results showing the condi-

tion of appellant's disc prior to the automobile accident. Further, Dr. Samuelson stated that he had not reviewed the records of Drs. Vates or Amayo, two of Ms. Moran's treating physicians, in rendering his opinion. Finally, Dr. Samuelson's work-related history may have undercut his effectiveness as an expert witness. Dr. Samuelson confirmed that he had been fired by Dr. Spitz, whom he had worked for in Philadelphia. During that same period he was released from his duties at the Broad Street Hospital in Philadelphia. Later, after becoming an associate staff member at St. John's Hospital in Steubenville, Ohio, he was denied full clinical privileges and later had his staff privileges revoked. Dr. Samuelson also admitted that he had been denied privileges at Ohio Valley Hospital, Weirton Hospital, and that his application for privileges at East Liverpool City Hospital has never been acted upon and he has never received privileges at that hospital. The only hospital at which Dr. Samuelson has privileges, according to his testimony, is Potter's Medical Center, a 50–bed hospital owned by his wife.

Appellee called two expert medical witnesses, neither of whom had been hired by appellee to examine appellant. Dr. Amayo first saw Ms. Moran on March 3, 1986, at the Allegheny Center Mall, a sub-division of the Harmarville Rehabilitation Center. Ms. Moran, during her history, informed Dr. Amayo of the work-related incident involving the combative patient. Ms. Moran also informed the doctor that she had pain in her neck which occasionally radiated to the left upper extremity. Dr. Amayo performed a physical examination and diagnosed Mrs. Moran as suffering from chronic cervical strain. He prescribed physical therapy. Dr. Amayo next saw Ms. Moran on March 18, 1986, at which time she complained that she was not improving with physical therapy. During that visit Ms. Moran also related an incident where her husband had forcefully grabbed her causing pain in her neck. Dr. Amayo prescribed continued physical therapy and informed Ms. Moran that he would soon release her to go back to work. During her next visit

with Dr. Amayo, Ms. Moran continued to complain of pain although the doctor could find no significant problems. The doctor again informed Ms. Moran that he was ready to release her to return to work. Subsequent to that visit, Ms. Moran failed to attend three scheduled appointments as well as her physical therapy sessions.

Finally, appellee offered the testimony of Dr. Durning. The doctor first examined Ms. Moran on June 5, 1988, at his office. While giving Dr. Durning a history, Ms. Moran told him of the work incident involving the combative patient. Ms. Moran also told Dr. Durning that she was under the care of Dr. Vates when she was involved in an automobile accident. Dr. Durning testified that Ms. Moran told him that the automobile accident had caused only a temporary increase in her symptoms. Dr. Durning testified, to a reasonable degree of medical certainty, that the then-current symptoms he observed were principally the result of the work-related incident. He was unable to determine what part of the current symptoms were causally related to the automobile accident.

Following this extensive medical testimony the jury returned a general verdict in Todd Machuca's favor.

As stated previously, when reviewing the propriety of an order denying a motion for a directed verdict or for a judgment n.o.v., the sole function of this court is to determine whether there was sufficient competent evidence to support the verdict. *Curran v. Philadelphia Newspapers, Inc., supra.* This court will reverse the trial court only when there has been an error of law or a clear abuse of discretion. *Timbrook v. Foremost Insurance Co., supra.* In order to successfully prove liability against appellee, it was necessary for appellant to establish that the automobile accident was a substantial factor in causing her harm. Here, the expert medical testimony was conflicting as to what extent, if any, of appellant's injuries were related to the automobile accident. A jury, when confronted with conflicting expert testimony, is free to determine which opinions it will believe and which it will discredit. Clearly,

there was conflict among these various experts. At best, appellant's most credible experts could only opine that the automobile accident caused some injury to appellant, but could not distinguish the extent caused in the automobile accident from that caused by the work-related incident. Appellant argues that the fact that any injury was suffered as a result of the accident, coupled with the appellee's admitted negligence, entitles her to a directed verdict on liability, or at least to a judgment n.o.v. on liability with the grant of a new trial as to damages. Such an argument ignores our previous ruling in *Holland v. Zelnick*, 329 Pa.Super. 469, 478 A.2d 885 (1984), wherein we held that the mere fact that an expert medical witness testifies that a vehicle collision from the rear can cause soft-tissue injury to the cervical area, and that the plaintiff might have very well suffered such an injury, did not require the jury, even after finding the defendant to have been negligent, to award plaintiff any amount of damages. Clearly, the present case is controlled by our holding in *Holland.* The jury was free to return a general verdict in appellee's favor, in this case. The trial court committed no error of law, nor did it abuse it's discretion by denying appellant's motions for a directed verdict or for a judgment n.o.v.

Appellant's second issue raises questions concerning the trial court's ruling on a motion in limine and charge to the jury. At the pretrial conference, appellant presented the trial court with a motion in limine requesting, *inter alia,* that appellee be prevented from introducing any evidence to the jury about the existence or receipt of worker's compensation, medical or wage loss benefits paid to appellant as a result of the work-related incident. The trial court denied the motion and instead fashioned an order treating medical benefits and wage loss benefits separately for evidentiary purposes. Regarding medical benefits, the trial court ruled that if appellant attempted to introduce any medical bills incurred after the date of the automobile accident and paid for by, or submitted to, the compensation carrier, appellee would have the opportunity to explore the existence and

receipt of these benefits by appellant. Regarding lost wages, the trial court ruled that appellant could introduce evidence of past lost wages, but the court would instruct the jury to deduct $168.00 per week from any past wage loss determination. At the close of the trial the court gave the following charge to the jury with respect to the medical bills incurred by appellant:

Now, then first, let me sort of, before we go further, say what the case involves and what it does not involve. You have listened to and observed a great deal medical evidence in this case, and you have also heard quite a large number, I, think, of Doctors and so forth to whom the Plaintiff went for treatment or consults and what not, who didn't even appear in court: which, of course, is perfectly natural because when you have so many, there is a limit to the number you can call, you know. But undoubtedly, it has occurred to you that there must be enormous medical expenses involved here because you know how they have gone through the roof. I am sure they are far greater than I would even be able to pay. But they are not involved here in this case at all because that is taken care of here from a source that has nothing to do with your deliberations. So all medical expenses which have occurred and been paid or which have occurred and not been paid, presumably will undoubtedly be paid, and it will not cost the Plaintiff anything and it will not cost the Defendant anything. So don't think about things that are not in this case, just what is.... And for the same reason and following the same—for the same reason, if you were to find that the Defendant is liable here and that the Plaintiff should be awarded for damages for lost earnings up to the time of the trial from the time of this automobile accident, you would be required to deduct from any such finding the sum of $168.00 a week, which, again, she receives just as the medical bills were paid, you see what I mean, having nothing to do with this—costing nothing more to this Defendant or this Plaintiff.

Appellant maintains that this charge, and the trial court's ruling on the motion in limine were both violative of the collateral source rule. According to appellant, the jury was influenced by evidence of collateral benefits when making its determination as to liability.

■ Regarding appellant's argument that the trial court's ruling on the motion in limine violated the collateral source rule, we must disagree. In response to the motion in limine, the trial court ruled that if appellant attempted to introduce any medical bills incurred subsequent to the automobile accident, which had already been paid by the compensation carrier, then appellee was going to be allowed to bring to the jury's attention that these bills were paid in connection with her work-related injury. Such a ruling by the trial court is logically consistent with our holding in *Collins v. Cement Express Co.*, 301 Pa.Super. 319, 447 A.2d 987 (1982). In *Collins* the plaintiff raised the argument before this court that the introduction, at trial, of testimony that he had received Social Security Disability benefits was violative of the collateral source rule. This court concluded that because plaintiff, himself, had first introduced the subject at trial, defendant could properly probe into the subject on cross-examination. Similarly, that was the result produced by the trial court's ruling in the present case. The ruling merely provided that if appellant was going to introduce medical bills relating to the compensation claim, appellee was going to be permitted to explore the source of payment of those bills. The ruling did not permit appellee to address the subject of compensation payments unless and until this subject was first addressed by appellant. Indeed, appellant did not introduce any medical bills at trial, and the subject of worker's compensation was never mentioned by appellee. As to the part of the ruling on the motion in limine dealing with past lost wages, again we find the trial court did not err. By introducing evidence of past lost wages, appellant was entering into the realm of the worker's compensation subject area. The order fashioned by the trial court was a means of balancing the interests of both

parties. The order did not allow the appellee to engage in questioning as to other sources of payment for past lost wages, yet it safeguarded against an undue windfall for appellant by calling to the jury's attention that a certain sum had to be deducted from any award for past lost wages, as those amounts were paid to compensate for a work-related injury that was in no way associated with the automobile accident giving rise to the instant lawsuit.

■ Finally, we conclude that the trial court's charge to the jury was not violative of the collateral source rule. As appellee notes, this situation is distinguishable from the normal scenario in which collateral source issues arise. All of the cases cited by appellant involve situations wherein a plaintiff is injured in an accident, receives medical and/or wage loss benefits for the injuries sustained as a result of *that* accident, and during the subsequent suit against the tortfeasor to recover for those same injuries, the tortfeasor attempts to introduce evidence of the payments from the collateral source. In those situations the rationale behind the application of the collateral source rule is that it would be unfair for the wrongdoer to receive the benefit of payments made by the collateral source. As stated by the Supreme Court in *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 33, 188 A.2d 259, 259 (1963), "a tortfeasor may not ride to immunity from his wrong on the back of worker's compensation paid by someone else." In the present situation, appellant had suffered a prior accident and was already receiving worker's compensation benefits for *those* injuries when the accident giving rise to this litigation occurred. Thus, this was not a situation where appellee was attempting to receive the benefit of the compensation payments for injuries he may have caused to appellant. The payment of the compensation pre-dated the happening of the accident in this instance. The trial judge was therefore faced with a difficult situation. The trial judge realized that after listening to seven different doctors testify regarding the various tests and treatments administered to appellant, the jurors would realize that appellant had incurred some tremendous

medical expenses. However, many, if not all, of those expenses had nothing to do with the alleged injuries suffered as a result of the automobile accident. Therefore, the trial court was faced with balancing the interests of each party without prejudicing either. To leave the jury with the impression that all of this medical treatment had gone uncompensated would have been prejudicial to appellee. As a result, the trial court fashioned a jury charge that we believe struck a proper balance in light of the facts, and prejudiced neither party. This same conclusion holds true for that part of the charge respecting past lost wages. Again, appellant was already receiving such benefits for injuries related to a separate accident when this accident occurred. Furthermore, Ms. Moran's own doctor testified that he had examined her approximately one month prior to the auto accident and although he had cleared her to return to light-duty work, appellant had not done so as of the date of the automobile accident. By all accounts, it did not seem as though appellant was planning to return to work at any time in the near future when the automobile accident occurred. Thus, any award for past wage loss had to be reduced by $168.00 per week as appellant was already receiving that amount as the result of a prior injury unrelated to the automobile accident. These were dollar amounts that the jury could not properly impose upon appellee even if it had found him liable. Therefore, we conclude that the trial court's charge to the jury was not violative of the collateral source rule.

Judgment affirmed.

DEL SOLE, J. files a concurring statement.

DEL SOLE, Judge, concurring.

Upon review of the effect of the trial court's ruling on the motion in limine which resulted in the exclusion of evidence relating to the benefits paid through worker's compensation, I conclude that a proper result was achieved in accordance in 75 Pa.C.S.A. § 1722 entitled "Preclusion of pleading, proving and recovering required benefits." Because this

64

evidence was not introduced, and because in my view it could not have been under the Motor Vehicle Financial Responsibility Law, I would find no need to discuss the applicability of the collateral source rule to this case.