**Robert NIGRA and Kathleen Nigra, Appellants,**

v.

**Joseph P. WALSH, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 11, 2001.

Filed April 17, 2002.

Gregory L. Nester, Norristown, for appellants.

Nathaniel P. D'Amico, Norristown, for appellee.

BEFORE: JOYCE, OLSZEWSKI and MONTEMURO *, JJ.

JOYCE, J.

¶ 1 Appellant, Robert Nigra,[1] appeals from the August 1, 2001 [2] judgment entered by the Court of Common Pleas of Montgomery County in favor of Appellee, Joseph P. Walsh, Jr. Upon review, we reverse and remand for a new trial consistent with this memorandum.

¶ 2 The factual and procedural background of this case are as follows: Appellant commenced this personal injury action as result of a March 5, 1994 motor vehicle accident which occurred when the vehicle driven by Appellee collided with the vehicle in which Appellant was a passenger. That vehicle was being operated by Appellant's wife, Kathleen Nigra. While Appellant claimed to have suffered injuries, in the nature of disc herniations, as a result of this collision, Kathleen Nigra made no such claim. Appellant also claimed that as a result of the injuries suffered from the accident, he was forced to close down his gas station. At the trial held on January 25, 2001, Appellee admitted his negligence in this matter but argued that his negligence was not the proximate cause of Appellant's injuries. The jury returned a verdict in favor of Appellee, finding that his negligence was not the proximate cause of Appellant's injuries.

¶ 3 Appellant filed a post-trial motion seeking a new trial. The motion was denied by the trial court on May 3, 2001. The instant appeal followed.

¶ 4 The questions presented for our review are as follows:

I. Whether the trial court erred in denying Appellant's motion for a new trial because the trial judge permitted the jury to hear evidence that the Appellant's [sic] were receiving social security disability benefits.

II. Whether the trial court erred in excluding cross-examination on the issue of bias.

Brief for Appellant, at 4 (initial capitalization omitted).

¶ 5 Before addressing these issues, we set forth our well-settled standard of review. "We are aware of our deferential standard when reviewing a trial court's decision to grant or deny a new trial: the power to grant or deny a new trial lies inherently with the trial court, and we will not reverse its decision absent a clear abuse of discretion or error of law which controlled the outcome of the case." *Tudor Ins. Co. v. Township of Stowe,* 697 A.2d 1010, 1012 (Pa.Super.1997) (citation omitted). The trial court abuses its discretion when it misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result. *Chanthavong v. Tran,* 452 Pa.Super. 378, 682 A.2d 334, 338 (1996) (citations omitted).

¶ 6 First, Appellant argues that the trial court erred in permitting Appellee to present evidence that Appellant was

---

* Retired Justice assigned to Superior Court.

1. We will refer only to Robert Nigra as Appellant even though Kathleen Nigra is also an appellant in this case. Kathleen's loss of consortium claim is purely derivative.

2. Although Appellant purportedly appealed from the May 3, 2001 order of the trial court, the appeal properly lies from the August 1, 2001 judgment.

receiving social security disability benefits. This, according to Appellant, violates the collateral source rule. We agree.

Generally, "[t]he collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrong-doer." *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96, 100 (1995). This rule "was intended to avoid precluding a claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, e.g. insurance." *Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.,* 504 Pa. 618, 476 A.2d 350, 352 (1984); *see also, id.* at 353 (the rule is "intended to prevent a wrongdoer from taking advantage of the fortuitous existence of a collateral remedy"); *Denardo v. Carneval,* 297 Pa.Super. 484, 444 A.2d 135, 140 (1982) ("Pennsylvania law is clear; the victim of a tort is entitled to the damages caused by the tortfeasor's negligence regardless of compensation the victim receives from other sources"), *citing, inter alia, Boudwin v. Yellow Cab Co.,* 410 Pa. 31, 188 A.2d 259 (1963).

*Griesser v. National R.R. Passenger Corp.,* 761 A.2d 606, 609 (Pa.Super.2000).

■ ¶ 7 Further, "[w]hen improperly admitted testimony may have affected a verdict, the only correct remedy is the grant of a new trial." *Id.* at 608 (*citing Collins v. Cooper,* 746 A.2d 615, 620 (Pa.Super.2000)). In the case at bar, our examination of the record shows that Appellee's counsel cross-examined Appellant regarding the fact that Appellant applied for social security disability benefits. The questions were phrased in such a way as to suggest that Appellant was indeed receiving social security benefits. The following is the text of the questions regarding social security benefits elicited by counsel on cross-examination:

"Q [By Defense counsel]: **Okay, You're still on Social Security; are you not?**

Mr. Nester [Appellant's counsel]: Objection, Your Honor.

Q[By Defense counsel]: Or do you have heart problems?

A[By Appellant]: No I don't have heart problems.

Q: You take medication; do you not?

A: That little bit is insignificant.

Q: If you don't take it will you have a problem?

A: I don't think so.

Q: Okay.

A: The doctor might think so but I don't.

The Court: What kind of heart medication do you take?

A[By Appellant]: Lepressor and an aspirin.

[sidebar discussion]

\* \* \* \* \* \*

Q[By Defense Counsel]: In front of you, you have some records, some of which you filled out, and the purpose for which I gave them to you is so you could follow me on certain questions. If you don't remember what you said, you can refer to those.

Did you make an application to the government claiming that you were disabled, beginning in January, 1998, for badness in your back and heart disease[?]

Mr. Nester [Appellant's counsel]: Kindly note my objection.

The Court: Overruled.

A[By Appellant]: Yeah.

Q: You did? And did you tell them the type of medications you were on?

A: I probably did.

Q: Okay. And were some of those medications heart medications?

A: At that time, yes.

Q: And did you tell them that you had a heart catherization, was sent to Albert Einstein, and was removed from Cardiac Intensive Care to Albert Einstein?

A: Yes.

Q: Did you write a letter to them dated ... April 4, 1998?

\*　　\*　　\*　　\*　　\*　　\*

A: Yeah, I sent this letter in.

Q: Okay. Does that suggest that you have heart disease?

A: It says here, I'm on heart medication.

Q: Does it say you're on heart medication for heart disease?

A: Heart medication for heart disease.

Q: Is it still true?

A: It may be but I don't think so.

Q: Then, you also happened to fill out some questionnaires for them about your daily pain?

A: I believe we did, yeah.

\*　　\*　　\*　　\*　　\*　　\*

Q: And they also ask you to answer some questions on the Daily Activities Questionnaire.

A: Okay.

Q: Okay. Now you signed all these papers?

A: Yeah, I did.

Q: And what's contained in them is true; is it not?

A: At that time, it was true, sure.

Q: Okay. Is there anything that's not true today, I mean, that's changed?

A: Well, I'm not taking all these heart medications anymore.

N.T., 1/26/2001, at 190–200 (emphasis added).

¶ 8 Further, during Appellee's cross-examination of Kathleen Nigra, the issue of social security benefits was also raised as follows:

Q[By Defense counsel]: Did you help him fill out Social Security Administration, the application, where he complained of shortness of breath and an inability to walk[,] and heart problems?

A[By Kathleen Nigra]: After he closed the gas station, I said that he was having trouble walking, and yes, I did fill out Social Security forms for him.

Q: In fact most of the Social Security applications that were filed by your husband were authored by you; is that correct?

A: They were written by me and filled out by me. With his help, we would sit down and he would tell me. My handwriting is better than his and I would fill them out, with his input, as to how he felt.

Q: **You have been on Social Security Disability and you knew how to fill out these forms; is that correct?**

Mr. Nester [Appellant's counsel]: Objection, Your Honor.

The Court: Overruled.

Q[By Defense counsel]: You knew how to fill out these forms; is that correct?

A: I answered the questions. I don't know what you mean by knowing how to fill out the forms. I answered questions.

Q: **Well, you've been through the process and it took your husband three times going through the process in order to get that to fruition; did it not?**

Mr. Nester: Objection your Honor.

The Court: To make applications, in other words?

Defense counsel: Yes.

Q:[By Defense counsel]: I mean, a number of applications were made; is that correct?

A: Well, we went through the process. We did the—I forget, exactly, what the procedure was. We filled out the application and we had to do further—

N.T., 1/25/2001, at 54–56 (emphasis added).

¶ 9 In addition to the cross-examinations, in his opening statement, Appellee's counsel unequivocally informed the jury that Appellant was receiving social security benefits. Counsel stated as follows: "We're not suggesting that he [Appellant] doesn't have problem with his back. In fact, he applied for Social Security Disability, was turned down a few times. **He finally did get it** after he developed a heart condition, not related to this accident, [and] had a few heart operations." N.T., 1/25/2001, at 13 (emphasis added).

¶ 10 Based on the above excerpts and our review of the record, we conclude that the questions by Appellee's counsel when combined with his opening statements did indeed suggest to the jury that Appellee was receiving social security disability benefits, and that his wife, Kathleen was, or had been receiving social security disability benefits. The cumulative effect of counsel's questions and comments is that the jury was informed that Appellant was receiving social security disability benefits for the same injury which is the subject of the litigation.

¶ 11 We recognize that Appellee's proffered reason for the inquiry about social security was to point out the inconsistency between the statements made by Appellant in the social security application and Appellant's position and statements at trial.[3] However, Appellee's questions and comments did not always focus on the alleged inconsistencies, but sometimes focused on the fact that Appellant was receiving social security benefits.[4] This leads us to question whether the **real** reason for the references to social security benefits was to inform the jury that Appellant was receiving those benefits. *See Lengle v. North Lebanon Township*, 274 Pa. 51, 117 A. 403 (1922). In *Lengle*, evidence was admitted that the children of a decedent were receiving compensation from a collateral source. The offer supporting the admission of the evidence stated that the purpose was to show that plaintiff could not maintain the action in right of the children. The court found that "[t]he real purpose (not part of the offer) was to convey to the jury the fact

3. Outside the presence of the jury Appellee's counsel stated the following to the trial court:
    I'm not raising the Social Security because I want a setoff from them. They're just to indicate to the Court and the jury that the plaintiff [Appellant] did make a Social Security application. He said certain things in those certain Social Security applications that really bare [sic] on this case and what his injuries are, what his disabilities are. And if I understand the claims, he says he's disabled as a consequence of this accident by reason of his back condition. It's my position that he said other things to the Social Security Administration which do not support his claim for disability.
    So, it's my belief and feeling that whatever he said to the Social Security Administration is relevant to this matter and the jury should hear it. . . .
    N.T., 1/26/2001, at 148.

4. The alleged inconsistencies could have been easily established by asking Appellant about his applications to a government agency and whether his statements in those applications are true. Appellant could then be questioned regarding the specific instances of inconsistent statements contained in the applications as well as how these statements contradict or are inconsistent with Appellant's position and statements at trial. This could have been done without revealing the governmental agency to which Appellant applied and without revealing the result of these applications.

that the children were already being taken care of under the compensation laws of the state, and the amount received by them. No further suggestion was necessary to convince [the jury] the township should not be asked to pay more to the children or any sum in relief of the employer." *Id.* at 404. *See also Lobalzo v. Varoli,* 409 Pa. 15, 185 A.2d 557, 559 (1962).

¶ 12 Further support for our skepticism about the proffered reason lies in Appellee's questioning of Kathleen Nigra. Kathleen's claim was only based on loss of consortium and her health, physical well being and financial status were not at issue. Nevertheless, Appellee's counsel cross-examined Kathleen about the fact that she had been or was still receiving social security benefits, about the fact that Appellant applied for social security benefits several times before the application came to fruition.[5]

¶ 13 Appellee argues that because of the questions posed by Appellant's counsel in his direct examination of Appellant in response, Appellee is entitled to explore the issue of social security benefits on cross-examination. While we agree that Appellee is entitled to explore on cross-examination a subject raised during direct examination, the cross-examination in this case exceeded the subject of the direct examination. On direct examination, the following exchange took place:

Q[By Appellant's counsel]: When did you first see a doctor for your heart?

A[by Appellant]: Probably in September of, I guess, '97.

Q: About four months or so after you shut the service station down?

A: Whatever the difference is between the end of May and September.

Q: What led you to the heart doctor?

A: I thought I had indigestion on a consistent basis, and I went to go see him, figuring he'd give me Maalox or something, you know. And he thought it wasn't and he said, why don't you try a stress test?

Q: Who was that doctor, by the way?

A: That was Carnival.

Q: Did he perform a stress test?

A: Yes.

Q: And what happened next in terms of your heart care?

A: They told me I had three blocked arteries.

Q: And what did they do?

A: They sent me to Einstein and they put two stents in. They couldn't put the third one in because they can't get to it.

Q: Now, during the period of time that you were treated for your heart—when was your heart surgery?

A: September.

Q: Same month?

A: Probably, the end of September or early October. I mean, it was bing, bing, boom.

Q: And after the surgery, who did you treat with for your heart?

A: Santilli, Dr. Santilli. And Carnival, too, both of them.

Q: For how long did you treat with Dr. Santilli?

A: Maybe a year.

Q: And during that year, did you treat with any doctors for your back condition?

---

**5.** Although Kathleen helped Appellant to complete the applications, this fact could have been established without revealing that Appellant's application came to fruition; *i.e,* that he finally began to receive social security benefits.

A: At that time, yeah. I was seeing Dr. Randall Smith.

N.T., 1/25/2001, at 136–137.

■ ¶ 14 The above questions and answers regarding Appellant's heart condition in no way relate to, imply, or suggest that Appellant filed a social security application or was receiving social security disability benefits. Therefore, Appellant's direct examination does not, and could not provide the basis for Appellee's cross-examination on the issue of Appellant's receipt of social security disability benefits. Because of our conclusion that Appellant did not initiate the issue of social security benefits, we find that *Collins v. Cement Express, Inc.*, 301 Pa.Super. 319, 447 A.2d 987, 988 (1982) is inapplicable. *Collins* involved a situation in which our Court determined that evidence of the plaintiff's application for and receipt of collateral benefits (social security benefits) was properly admitted because the plaintiff himself first introduced that subject at trial.

■ ¶ 15 Appellee also argues that the collateral source rule was not violated because the jury found that Appellee's negligence was not the proximate cause of Appellant's injuries; the issue of damages was not reached by the jury and as such the collateral source rule was not implicated. We disagree. While the primary focus of the collateral source rule is to avoid the preclusion or diminution of the damages otherwise recoverable from the wrongdoer based on compensation recovered from a collateral source, in some instances, the violation of the collateral source rule can affect the jury's deliberation and decision on the issue of liability. As our Supreme Court noted in *Lobalzo v. Varoli*, 409 Pa. 15, 185 A.2d 557 (1962), in some cases where there is a violation of the collateral source rule,

it is impossible to conjecture what influence the erroneously admitted evidence on workmen's compensation and unemployment compensation, as well as the misleading charge, had in bringing the jury to the conclusion it reached. When an error in a trial is of such consequence that, like a dash of ink in a can of milk, it cannot be strained out, the only remedy, so that justice may not ingest a tainted fare, is a new trial. The defendants' improper emphasis on the subject of an assumed double or triple payment may well have caused the jury to disbelieve the plaintiff with regard to his testimony on the manner in which the accident occurred.

*Id.* at 561.

¶ 16 In the instant case, pursuant to *Lobalzo, supra*, we hold that Appellee violated the collateral source rule and that it is impossible to conjecture what influence this violation had in the bringing the jury to the conclusion that Appellee's negligence was not the proximate cause of Appellant's injuries.

■ ¶ 17 The second issue raised by Appellant concerns the trial court's exclusion of a portion of the deposition testimony of Appellee's expert, Dr. William H. Spellman. Appellant claims that the jury should have heard a question and answer from the deposition of Dr. Spellman because they were not objected to at the deposition (*see* Pa.R.C.P. 4016(c)): "Q: Would it be fair to say that all of the independent medical examinations that you perform are done on behalf of insurance carriers? A: No. Most of them are, but not all of them .... probably about 90 percent of the time, it's on behalf of defendants." Brief for Appellant, at 14.

¶ 18 While this evidence may be admissible to establish bias pursuant to Pa.R.E. 411, we agree with the trial court that the prejudicial effect of this information out-

weighs its probative value. *See* Pa.R.E. 403. Therefore, we find no abuse of discretion in this ruling.

¶ 19 In conclusion, we find that Appellee violated the collateral source rule by informing or suggesting to the jury that Appellant was receiving social security disability benefits for the same injuries at issue in the current litigation. Because it is impossible to determine what effect this violation had on the jury, we reverse the judgment entered by the trial court and remand for a new trial consistent with this memorandum.

¶ 20 Reversed and remanded for a new trial. Jurisdiction Relinquished.

¶ 21 OLSZEWSKI, J. files Concurring and Dissenting Opinion.

Concurring and dissenting opinion by OLSZEWSKI, J.

¶ 1 While the expression of the majority view provides a persuasive analysis and sound rationale, I am obliged to differ and must respectfully offer a concurring and dissenting memorandum.

¶ 2 I review this case in light of our holding in *Collins v. Cement Express*, 301 Pa.Super. 319, 447 A.2d 987 (1982). In *Collins*, plaintiff appealed the trial court's admission of testimony regarding his application for and receipt of social security benefits as violative of the collateral source rule. *Id.* at 988. At trial, plaintiff had his doctor appear as an expert to testify that plaintiff's disability was a result of the car accident in issue. *Id.* Two years after the accident, however, the doctor supplied information on a benefits application to the Social Security Administration, stating plaintiff suffered from severe diabetes and hypoglycemia, making no mention of the car accident. *Id.* The facts as such, we refused to address plaintiff's arguments on appeal because he had first introduced the

subject matter at trial. We held that it was proper for defendant to "probe into the subject matter in cross-examination." *Id.* We reaffirmed this holding in *Gigliotti v. Machuca*, 409 Pa.Super. 50, 597 A.2d 655, 660–61 (1991).

¶ 3 In this factually analogous case, counsel for appellants placed the subject of Mr. Nigra's heart condition in issue at the start of trial. Appellants' counsel raised Mr. Nigra's heart condition in opening statements, N.T., 1/25/01, at 7; the direct examination of Mrs. Nigra, N.T., 1/25/01, at 38–39; and the direct examination of Mr. Nigra, N.T., 1/25/01, at 136–139. I believe that once appellants raised the issue on direct examination, appellee was justified in probing the issue on cross-examination. *Collins, supra*. Probing the issue effectively included Mr. Nigra's application for social security benefits, and the statements made within. Mr. Nigra claimed as a result of this accident he suffered "severe and disabling injuries" causing him "great" financial detriment. Nigra Complaint ¶¶ 7, 9. Appellee's counsel, through cross-examination, attempted to show that Mr. Nigra's disabilities were not solely the result of injuries suffered in the accident *sub judice*. Appellants' attempt to discount the severity of Mr. Nigra's heart condition on direct examination was properly impeached by appellee on cross-examination. I must, therefore, respectfully dissent to the majority's finding that appellee's cross-examination was improper and that appellants are entitled to a new trial.

¶ 4 I do, however, concur with the majority in the result reached on the second issue raised by appellants; the prejudicial effect of the doctor's testimony outweighed its probative value.