**[J-77-2018] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| LANETTE MITCHELL, | : | No. 55 WAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered May 5, 2017 at No. 384 |
| | : | WDA 2016, reversing the Judgment of |
| v. | : | the Court of Common Pleas of |
| | : | Allegheny County entered February |
| | : | 22, 2016 at No. GD 13-023436, and |
| EVAN SHIKORA, D.O., UNIVERSITY OF | : | remanding. |
| PITTSBURGH PHYSICIANS D/B/A | : | |
| WOMANCARE ASSOCIATES, MAGEE | : | ARGUED: October 23, 2018 |
| WOMENS HOSPITAL OF UPMC, | : | |
| | : | |
| Appellants | : | |

**CONCURRING OPINION**

**JUSTICE WECHT** **DECIDED: JUNE 18, 2019**

I concur in the result reached by the learned Majority. I write separately to highlight four areas of concern.

I.

As the Majority notes, evidence of consent is not relevant to the issue of negligence, inasmuch as a patient's consent does not make a physician's negligence more or less probable. Maj. Op. at 14-15. On the other hand, evidence of risks and complications "may aid the jury in determining both the standard of care and whether the physician's conduct deviated from the standard of care." *Id.* at 16. Importantly, the Majority recognizes that these are "two discrete categories of evidence." *Id.* at 14.

Trial judges have a critical role to play in ensuring that these categories are not conflated. To avoid juror confusion, it is imperative that judges carefully police the line

between evidence of consent and evidence of risks and complications. Trial courts rigorously should monitor the presentation of evidence in order to ensure that irrelevant consent evidence is not introduced as risk evidence and does not taint the record concerning the negligence question presented to the jury. Similarly, the trial court must be meticulous in its instructions to the jury so that the jury clearly understands the distinction. To that end, the Committee for Proposed Standard Jury Instructions should review the current model jury instructions in order to assess whether any revisions are appropriate in light of today's decision.

II.

Additionally, I distance myself from the Majority's invocation of the *Brady* Court's willingness to use the "informed-consent sheet" as evidence of risks and complications. Maj. Op. at 16 (citing *Brady v. Urbas*, 111 A.3d 1155, 1161-62 (Pa. 2015)).[1] In *Brady*, this Court stated that "[e]vidence about the risks of surgical procedures, in the form of either testimony *or a list of such risks as they appear on an informed-consent sheet*, may also be relevant in establishing the standard of care." *Brady*, 111 A.3d at 1161-62 (italics mine). Evidence of risks and complications may be relevant and admissible on the question of the standard of care. However, no "informed-consent sheet" may be used lawfully for that purpose.

First, such evidence increases the likelihood that the jury will receive irrelevant evidence related to consent. Using the informed-consent sheet to demonstrate the known risks and complications crosses the line that the trial court vigilantly must guard. Like the

---

[1] The Majority now chooses to interpret *Brady* as something less than a blessing to present the "informed-consent sheet" to the jury. Maj. Op. at 15 n.9. Rather than strain to interpret and harmonize the *Brady* Court's language in this manner, I would simply disavow it.

proverbial "dash of ink in a can of milk," the taint of such consent evidence "cannot be strained out." *See Deeds v. Univ. of Penn. Med. Ctr.*, 110 A.3d 1009, 1014 (Pa. Super. 2015) (quoting *Nigra v. Walsh*, 797 A.2d 353, 360 (Pa. Super. 2002) (quoting *Lobalzo v. Varoli*, 185 A.2d 557, 561 (Pa. 1962))).

Second, the introduction of the informed-consent sheet (and the inherent problems it presents) is unnecessary. As the Majority aptly states, "medical negligence cases involve a classic confrontation among experts, each testifying as to the appropriate standard of care." Maj. Op. at 17. Because there will be expert testimony in almost every medical malpractice case, expert witnesses can provide ample evidence of the risks and complications of a given procedure. Further, the defendant physician can testify regarding those known risks and complications. There is no reason to taint the jury with irrelevant consent evidence by introducing the informed-consent sheet when other methods can provide the jury with evidence of risks and complications that informs the standard of care, and can do so without improperly infecting the record with the taint of the patient's consent.

Regardless of whether the "informed-consent sheet" is admitted, presented to the jury, or read from by a witness, use of it is simply too risky and too unnecessary. The "informed-consent sheet" can play no role when consent is not at issue.

III.

Related to expert testimony, Mitchell suggested that studies should not be admissible if they do not distinguish between complications that occurred as a result of negligence and those that resulted from some other cause. Brief of Appellee at 25-29 (discussing *Holley v. Pambianco*, 613 S.E.2d 425 (Va. 2005)). In rejecting Mitchell's argument, the Majority holds that this type of challenge goes to the weight of the evidence,

rather than its admissibility. Maj. Op. at 18 n.12. The Majority also would permit a challenge pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). I agree in both respects. Parties should not hesitate to request leave to conduct *Frye* hearings when appropriate. While a *Frye* challenge usually relates to the methodology used by the testifying witness, I see no impediment to challenging the studies underlying that testimony upon the basis of *Frye*.


IV.

Finally, I note that an amicus brief submitted here in support of reversal (a reversal in which I concur) invoked a report labeling Philadelphia "The City of Unbrotherly Torts" and placing that city (and presumably the courts situate there) on a list of "Judicial Hellholes."[2] While amici, like parties, are free (and indeed duty-bound) to engage in zealous advocacy, it seems imprudent to rely for such advocacy upon unduly caustic or inflammatory materials that insult or cast aspersions upon the judicial system itself, or upon its component parts. Those filing briefs as friends of the court should consider this as they engage in their important work of informing and enriching the perspectives available to appellate jurists as the latter perform their jurisprudential duties.

---

[2] Brief *Amicus Curiae* of the American Medical Association, the Pennsylvania Medical Society, the Pennsylvania Academy of Ophthalmology, the Pennsylvania Academy of Otolaryngology - Head and Neck Surgery, the Pennsylvania Academy of Dermatology and Dermatologic Surgery, the Pennsylvania College of Emergency Physicians, the Pennsylvania Neurosurgical Society, and the Robert H. Ivy Pennsylvania Plastic Surgery Society at 14 (citing American Tort Reform Association's December 15, 2017 "Judicial Hellholes" Report).